# Cox *against* Livingston.

If the holder of a note place it in the hands of an attorney at law, with instructions to bring suit upon it, and the attorney, acting under the honest impression that he would best promote the interest of his client by not bringing suit immediately, omits to do so, and the money is afterwards lost by the insolvency of the payor, the attorney is liable in an action against him; and the measure of damages is what might have been recovered from the payor of the note, if suit had been brought when the note was placed in the hands of the attorney for collection.

ERROR to the District Court of *Allegheny* county.

Thomas Cox against John Rhey and Samuel Livingston, administrators of Thomas Livingston deceased. Thomas Livingston, in his lifetime, was an attorney at law, and this suit was brought against his administrators for negligence of their intestate, in not bringing suit upon a note placed in his hands by the plaintiff for collection, by reason of which the money was lost. On the trial of the cause the testimony was somewhat conflicting, as to the question whether the money could have been collected if suit had been brought immediately. But the principal question arose upon this instruction which the court gave to the jury:

" The delay here is not, of itself, such neglect as will enable the plaintiff to recover, provided the jury should believe, under the circumstances proved, that it was caused by the honest (though mistaken) exercise of Mr. Livingston's best judgment, and with a view (as he believed at the time) to the best interests of his client."

The jury found a verdict for the defendants.

[Cox v. Livingston.]

*Dunlop*, for plaintiff in error, argued that the case of *Lynch* v. *Commonwealth*, 16 *Serg. & Rawle* 368, was not applicable to this. The control which an attorney has over the rights of his client, renders it necessary that he should be held to the performance of his duty. He must sue, if his client requires it; he cannot exercise any discretion in giving time to the defendant, at the risk of his client. Here it is manifest that the client required that suit should be brought, and the attorney neglected to bring it; he is therefore liable. 1 *Selw. N. P.* 159; 12 *Mod.* 440; 7 *Cowen* 744; 8 *Mass. Rep.* 51; 3 *Day* 390; 15 *Mass. Rep.* 316; 4 *Barn. & Ald.* 401; 7 *Bing.* 413; 19 *Eng. Com. Law* 132; 2 *Chitt. Rep.* 311; 18 *Eng. Com. Law* 348; 15 *Pick.* 440; 10 *Eng. Com. Law* 232; 2 *Wils.* 325; 1 *Wheat. Selw.* 159; 17 *Serg. & Rawle* 25; 3 *Penn. Rep.* 224; 4 *Watts* 423; 3 *Johns.* 185; 2 *Wash.* 203.

*Baird*, for defendant in error, relied upon the case of *Lynch* v. *Commonwealth*, as settling all the principles involved in this case. As a question of expediency, the attorney should have a discretion to bring suit or not, as he may think may best promote the interest of his client. Inasmuch as the object to be obtained is to collect the money, it can often be best attained by forbearing to bring suit. Delay is not necessarily negligence. In 4 *Burr.* 2063, Lord Mansfield lays down the proper rule. In this case the verdict establishes the fact, that the defendants' intestate pursued the most prudent course, and that which was most likely to succeed. An attorney is not liable for error or mistake, but only for gross negligence. 1 *Selw. N. P.* 150; 8 *Mass. Rep.* 57.

The opinion of the Court was delivered by

KENNEDY, J.—This action was instituted in the court below, by the plaintiff, against the administrators of Thomas Livingston, for a breach of his duty as an attorney at law, in not bringing a suit, agreeably to his undertaking, against Martin Dubbs, to recover a debt of between $500 and $600, which Dubbs owed to the plaintiff upon a promissory note. According to the evidence, Mr. Livingston gave the plaintiff a receipt, dated at Pittsburgh, the 30th of August 1837, in the following words: "Received of Mr. Thomas Cox, of Lancaster, Pennsylvania, for *collection*, a note drawn in his favour by M. Dubbs, calling for $497.65, payable three months after date." On the same day the plaintiff made an affidavit in support of his claim against Dubbs, before Robert Christy, Esq., an alderman of the city of Pittsburgh. Mr. Livingston died in January 1838. Shortly after his death, either in the same month or the month following, this affidavit was found among his papers, in his office, attached to a *precipe* made out by him in his lifetime, for commencing an action in favour of the plaintiff, against Dubbs, by suing out an original writ. No suit, however, was ever commenced by Mr. Livingston, though two

[Cox v. Livingston.]

terms of the court elapsed, before his death, after the date of the receipt. Cox was in Pittsburgh some two or three days, at the time he put the note into the hands of Mr. Livingston for collection; and, from the testimony of Dubbs himself, who was examined as a witness, on the trial, it appeared that Mr. Livingston, after he received the note, had spoken to Dubbs about paying it; that Dubbs told Mr. Livingston he had not the money then, but expected to get it shortly, and would then pay the note. Dubbs also testified that he had sufficient property then, and throughout the whole of the autumn of 1837, and perhaps the following winter, to have satisfied the debt due upon the note; and if he had been sued for it by Mr. Livingston when the latter first received the note, the debt might have been recovered from him. It did not appear, however, from the evidence, that Cox had authorized Mr. Livingston to give any indulgence to Dubbs, or that he had consented that Mr. Livingston should exercise any discretion whatever in this respect. But there was some evidence given tending to show that it was, perhaps, somewhat doubtful whether the debt could have been recovered from Dubbs, even if he had been sued and prosecuted for it with all possible diligence by Mr. Livingston. Mr Mahon, examined as a witness on behalf of the defendant, seemed to think that Mr Livingston's indulgence to Dubbs, on the faith most likely of the latter's promising to get the money shortly, and pay the debt, was the most advisable course that Mr Livingston could have taken, in order to obtain payment of it. This evidence, however, can only be regarded as conjectural, at best, as no facts are testified to that would seem to warrant the opinion. At all events, it is certain that Mr Livingston did not succeed in getting the money from Dubbs by indulging him without bringing a suit, as it is probable he expected he would. But it may be that Mr Livingston thought he was more likely to succeed in obtaining money soon by trusting to the promise of Dubbs to pay it, than by bringing a suit against him to enforce it. And the court below seems to have taken up the idea, that if Livingston really thought so, and forbore accordingly to bring suit under that impression, believing it was best for the interest of the plaintiff to do so, he ought to be excused for not having brought suit, although it may have been that it resulted in an injury to the plaintiff. For the court say in their charge to the jury, in speaking of the neglect of Mr Livingston to bring a suit, that " the delay here is not such neglect as will enable the plaintiff to recover, provided the jury should believe, under the circumstances, as proven, that it was caused by the *honest* though *mistaken* exercise of Mr Livingston's best judgment, and with a view, as he believed at the time, to the interest of his client."

Exception was taken by the counsel of the plaintiff below to the charge of the court on this point, and it has been assigned for error in this court. We are decidedly of opinion that the instruc-

tion given to the jury on this point cannot be sustained: for unless the evidence, or the circumstances given in evidence, tended to prove that the plaintiff, in employing Mr Livingston as his attorney at law to collect the debt of Dubbs, left it entirely to the discretion of Mr Livingston to bring suit or not for it, just as he might think it most advisable, in order to secure the speedy payment of the debt, it was the duty of Mr Livingston to have brought suit immediately against Dubbs, and to have prosecuted it with reasonable diligence, according to the rules of the court established in that behalf, and by these means, if practicable, to have collected the debt; otherwise he acted upon his own responsibility, and made himself liable to the plaintiff for whatever loss he may have sustained by reason of suit not having been brought and prosecuted with reasonable diligence. But the evidence and the circumstances attending the employment of Mr Livingston to collect the debt, tend very strongly, if not conclusively, to show that no such discretion was given by the plaintiff to Mr Livingston; for it appears therefrom, that the plaintiff was in Pittsburgh himself at the time he placed the note in the hands of Mr Livingston for collection, after having applied first personally to Dubbs for payment; but finding that he could not obtain it in that way himself, he then put it into the hands of Mr Livingston for collection, as it would seem, because he was an attorney at law, for the purpose of enforcing the payment of the debt by means of a suit. This is certainly the natural inference to be drawn from the facts proven, of the plaintiff's being unable himself to obtain payment from Dubbs, and his then placing his claim *immediately* in the hands of an attorney at law, that he should effect the object by legal means. But this inference becomes irresistible, when connected with the fact of the plaintiff's having made the affidavit as he did, at the same time that he placed his claim in the hands of Mr Livingston, which affidavit was clearly preparatory to, and could be issued for no other purpose than that of bringing a suit to recover the debt. The jury, therefore, ought to have been instructed by the court, if they came to this conclusion, and we do not see well from the evidence how they could have avoided it, that notwithstanding they might think that Mr Livingston had omitted to bring a suit, solely with a view to promote the interest of the plaintiff, yet he had violated his engagement with and failed to perform his duty to the plaintiff, in not having brought and prosecuted a suit with reasonable diligence for the recovery of the debt due to the plaintiff; and having thus failed to perform his duty, he had rendered himself liable to pay to the plaintiff whatever of the debt might have been recovered of Dubbs by suit having been so brought and prosecuted, which Dubbs has now become unable to pay; and that it was the duty of the jury to find a verdict in favour of the plaintiff for that sum, whatever they should think it was. But if from the evi-

dence they should be of opinion, that a suit brought against Dubbs would have been unavailing, and that nothing could have been recovered by means of it, their verdict, though it ought still to be for the plaintiff, should only be for nominal damages. Under this view of the case, we think that the plaintiff ought to have a new trial.

<div align="center">

Judgment reversed, and a *venire de novo* awarded.