## Bradstreet *et al.* *versus* Everson *et al.*

1. Defendants had a " mercantile agency " in Pittsburg. Plaintiffs delivered acceptances at defendants' office, payable in Memphis, and took a receipt for them " for collection," signed in defendants' name, from a person acting in their business. Two years afterwards a person from defendants' office got from plaintiffs a power of attorney to enable defendants to collect the money, which defendants sent to their agent in Memphis. The defendants denied that they received the drafts for *collection*, and that the receipt was signed by their authority. *Held*, that these and similar facts were evidence for the jury as to the receipt being the defendants'.

2. By giving the receipt " for collection " the defendants undertook themselves to *collect*, not merely to remit for collection to some responsible attorney.

3. The defendants had agents in different parts of the country, one of them collected the money and failed to pay it over ; the defendants having given a receipt " for collection " were liable for collections made by their agents unless they expressly limited their liability.

4. Liability of attorneys at law and collecting agencies stated in this case.

October 10th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county :* No. 99, to October and November Term 1871.

This was an action of assumpsit brought June 19th 1870 ; W. H. Everson, Barclay Preston and C. L. Grant, trading as Everson, Preston & Co. against Henry Bradstreet, C. H. Ranney, M. Hoffman and L. B. Reese, trading as J. M. Bradstreet & Son.

The plaintiffs' affidavit of claim averred that on the 2d of June the defendants were carrying on a mercantile agency in Pittsburg, and had agents throughout the United States, one branch of their business being to make collections through their agents ; on that day the defendants undertook to collect for the plaintiffs, four drafts, amounting in all to $1726.37, which had been drawn by them on Watt C. Bradford, of Memphis, Tennessee, and had been accepted by him. On the delivery of the drafts the defendants gave plaintiffs this receipt :—

" J. M. Bradstreet & Son, Improved Mercantile Agency,
Pittsburg, June 2d 1865.

" Received from Messrs. Everson, Preston & Co., four duplicate acceptances for collection, against Watt C. Bradford, Memphis, Tennessee, amounting in all to $1726.37.
" J. M. BRADSTREET & SON."

The defendants sent the draft to John W. Wood, their agent at Memphis, who previously to September 1867, collected the money due on them with interest; the plaintiffs have since frequently applied to the defendants for the money so collected, but they had refused to pay it over.

The affidavit of defence was made by E. H. Nevin, the agent

[Bradstreet *v.* Everson.]

of the defendants and the superintendent of their Pittsburg office. It averred that it was not part of the business of the defendants " to take or make collections through their agents on the 2d day of June 1865" or since; that the defendants never received any drafts for collection, as set forth in the affidavit of claim ; that they did not at any time authorize or permit their agents or superintendents to receive for them any collections of any kind, but had long previously to the 2d of June 1865, forbidden their agents to receive any, and if any of their agents had received from the plaintiffs for collection the drafts set forth in the claim, "it was without their knowledge, against their instructions and never received their acquiescence or approval."

The case was tried March 27th 1871, before Sterrett, P. J.

Preston, one of the plaintiffs, testified that he delivered the acceptances to the defendants and got from them the receipt mentioned in the affidavit of claim.

The plaintiffs offered the receipt in evidence ; it was objected to as not being the receipt of the defendants, not signed by them nor by their authority. The court decided that there was sufficient evidence of its being genuine to go to the jury, and sealed a bill of exceptions.

Preston testified that the business of the defendants was that of a mercantile agency, and furnished information of the standing of parties all over the country; they issued a book to which the plaintiffs were subscribers, giving information on the subject of their business ; there was no agreement with the defendants as to their charge ; Dunn & Co., another mercantile agency, had collected for plaintiff and charged them 5 per cent.

On cross-examination, Preston said he had never seen Bradstreet, nor did he know that he ever had seen any of the defendants ; had heard that some of them lived in New York, and that they had their principal place of business there ; he did not know who gave him the receipt or by whom it was written ; it was given to him by a person in the office attending to the business.

Under objection and exception, the plaintiffs gave in evidence the books of defendants produced under a rule.

The entries showed, as follows :

| "By whom received, Everson, Preston & Co. | Plaintiffs' name, Everson, Preston & Co. | Defendant's name, Watt C. Bradford, Memphis, Tenn. |
|---|---|---|
| To whom sent, John W. Wood, Memphis. | When sent, June 2d 1865. | Amount, $343.46, accept. 408.36 " 842.31 " 132.24 " " |

In the ledger, under date June 21st 1865, the plaintiffs are credited by the above drafts severally.

[Bradstreet *v.* Everson.]

The plaintiffs then rested.

For the defendants, Nevin, their superintendent, testified that the business of defendants' agency since 1865 was to advise their subscribers only, as to the mercantile standing of business men; the books given in evidence by plaintiffs were the books of Bradstreet, Hoffman & Co.; the defendants were not members of that firm; the business of Bradstreet, Hoffman & Co. was to make collections and settle claims; they made collections through defendants' office for two or three years; employed witness and others in defendants' office; he believed plaintiffs and all other subscribers knew that Bradstreet, Hoffman & Co. were the collecting firm. As to the claims of plaintiffs, he consulted them and acted in the whole matter, as to directions to attorney, &c., under the explicit instructions of plaintiffs, and followed their instructions in detail; the claim was sent to J. W. Wood, of Memphis; he reported from time to time, and witness reported to plaintiffs, showed them every paper that he received; Wood was not the agent or attorney of the defendants; witness closed the business of Bradstreet, Hoffman & Co. by direction of the defendants; the office of defendants in Pittsburg was a branch office. J. M. Bradstreet was a member of both firms.

The defendants then read the deposition of J. B. Woodward, Esq., of Memphis, in which he said that the reputation of Wood, in July 1865, was good; he was an old lawyer; late in 1867 for the first, his reputation for honesty was called in question; in October 1867, deponent commenced proceedings against him to recover about $2000 which he had collected in 1866 for plaintiffs on these drafts from the estate of W. C. Bradford, the acceptor; deponent recovered against Wood a judgment which he removed to the Supreme Court; the case, owing to the disarrangement of the business of that court, had not been heard there, but it was expected it would be in May 1871; witness received a power of attorney from the plaintiffs to prosecute the suit. Wood offered to deponent to give real estate for the debt at a valuation to be fixed by appraisers chosen by the parties; he wrote to plaintiffs advising them to accept it, as it would be a good investment; to this deponent received no answer. He wrote again on the 24th of January 1869 on the same subject, and received an answer from plaintiffs, dated January 31st. Deponent did not communicate Wood's proposition to the defendants; the property offered had increased in value much beyond the debt. Deponent was of opinion that the Supreme Court would affirm the judgment against Wood, and if so, the money could be made. The deponent called on Wood for payment in company with J. De Soto, an agent of defendants, and at his resquest; deponent received no instructions from plaintiffs; his correspondence had been with the defendants. Deponent was acting as attorney of record for plaintiffs at the

[Bradstreet *v.* Everson.]

solicitation of De Soto; the defendants had no cause of action against Wood; deponent procured plaintiffs' power of attorney through defendants, in order to prosecute the suit as attorney of record.

The following is the power of attorney to J. B. Woodward:—

"Know all men by these presents, That we, Everson, Preston & Co., &c., have made J. B. Woodward, &c., our true and lawful attorney, for us and in our name, place and stead, to demand and receive of and from John W. Wood, attorney at law, all moneys belonging to us, and by him, said Wood, collected from Watt C. Bradford (now deceased), or from the personal representatives or estate of said Watt C. Bradford; and upon the receipt of said moneys in our name and stead a full acquittance and discharge to give, execute and deliver to John W. Wood; hereby ratifying whatever our said attorney, J. B. Woodward, shall lawfully do in the premises by virtue hereof. Should the said John W. Wood refuse or neglect to pay over to said J. B. Woodward said moneys upon due demand, we hereby authorize our said attorney to take any and all legal measures to compel such payment."

Letter of plaintiffs referred to Woodward's deposition:—

"Pittsburg, January 31st 1868.

"J. B. Woodward, Esq., Memphis, Tenn.—Yours of 24th inst. has been duly received, and in answer would say we are thankful to you for the information contained therein. We leave the matter entirely in the hands of Bradstreet & Sons, as we hold them for the amount of our claim against Watt C. Bradford's estate, they having collected the same through their attorney there.

"Respectfully yours,

"EVERSON, PRESTON & CO."

In rebuttal Preston, one of the plaintiffs, testified that the power of attorney was executed at the instance of some one representing defendants for the purpose of enabling defendant's attorney in Memphis to collect the money from Wood, and for that purpose only; and he got a receipt for the power of attorney at the defendants' office—the person who signed the receipt and to whom he gave the power of attorney, appeared to be in charge of the office; witness never gave any directions to Nevin about collecting the money. Plaintiffs received a letter from defendants on the subject of the collection of the drafts.

The plaintiffs then under objection—that the papers were not signed by defendants—and exception, gave in evidence the receipt and letter, written on a printed letter-head of defendants, as follows:—

"Received, August 30th 1867, of Everson, Preston & Co., their power of attorney, executed at our instance and request, and addressed to our agent at Memphis, Tennessee, J. B. Woodward,

authorizing him to receive from John P. Wood certain moneys received by him from Watt C. Bradford or his estate, and the collection of which we have undertaken.

> J. M. BRADSTREET & SON,
> per D. W. DICKEY."

"J. M. Bradstreet & Son.   Improved Mercantile Agency.

> "Pittsburg, February 27th 1868.

"Messrs. Everson, Preston & Co.

"Gentlemen: Enclosed please find the last letter we have received from our attorney at Memphis, in regard to your claim *v.* W. C. Bradford.   We are doing all in our power to compel Wood, the former attorney, to pay over the money he obtained, and hope to be successful.

> "Very respectfully, yours,
> "J. M. BRADSTREET & SON,
> Per E. H. NEVIN, JR., Sup't."

The plaintiffs gave evidence further by a number of witnesses that they had never received any information from defendant, or knew otherwise that Bradstreet, Hoffman & Co. were the collecting firm; and that about the year 1870 they had seen in one of the defendants' lists, which were furnished weekly to subscribers, that defendants were no longer collecting agents.

The defendants gave evidence that Dickey, who signed the receipt of August 30th 1867, had no authority to do so, and that the letter of February 27th 1868 was written in the usual course of their business, simply to inform their customers how the business was progressing.

The following were defendants' points, with their answers:—

2. If the defendants' office and business in Pittsburg was conducted by their agent, and the plaintiffs' claims for collection were received by such agent or agents, the plaintiffs must first show that the acceptance and undertaking of such collections was within the authority of such agent or agents, before they can hold defendants responsible for any default in relation thereto.

Answer: "This point is affirmed.   It is incumbent on the plaintiffs to satisfy you that undertaking to make such collections was within the scope of the agent's authority, or that the act of the agent in undertaking the collection was subsequently sanctioned or approved by the defendants.   The evidence shows that the defendants held themselves out to the public as a 'Mercantile Agency,' having branch offices at different points.   The title employed by them to indicate the business in which they are engaged, is very general and comprehensive, and persons dealing with them might readily suppose that it included collecting, but we do not say that it did.   The only evidence we have as to the character of the business transacted by other agencies of this

[Bradstreet v. Everson.]

description is that given in relation to the Mercantile Agency of Dunn & Co., of this city. The testimony tends to show that they (Dunn & Co.) undertook collections in connection with their other business; that the plaintiffs had business transactions with them, and were solicited to transfer their patronage, or part of it, to defendants' agency. If you find from the evidence that defendants held themselves out to the public as a 'Mercantile Agency,' and that making collections was within the scope of such business, and defendants had no notice to the contrary, then the defendants would be liable for the acts of their superintendent and agents in charge of the branch-office here in undertaking to make collections for the plaintiffs."

4. That defendants' agent communicated with plaintiffs and others about plaintiffs' collections in the name of defendants, and gave information relating thereto at and from an office in the charge and control of defendants' agent, are not evidence of authority in such agent to take such collections, or to use defendants' name.

Answer: "In connection with what has been said in answer to the 2d point, this point is affirmed."

6. If the plaintiffs placed their collections in Memphis in the hands of an agent of defendants at Pittsburg, who with plaintiffs' knowledge was agent also for a purely collecting agency, the defendants' principal business being notoriously of a different character, the presumption is that the plaintiffs were dealing with the said collecting agency only.

Answer: "If you find the facts as stated in this point, it is affirmed. The receipts and other papers in evidence tend to show that the plaintiffs were dealing with defendants, J. M. Bradstreet & Son, and not with another independent collecting agency; but the facts are for you."

7. If the plaintiffs placed their acceptances of Watt C. Bradford, of Memphis, Tennessee, in the hands of some person in the office of defendants' agent, at Pittsburg, for collection, and knew that such agent's personal attention and direct service in such collection would not in the usual course of business be given to it at Memphis, and that the employment of an attorney, at Memphis, to attend to it was necessary, or the proper and usual course of doing such business, then the plaintiffs thereby made either such person or defendants their agent therein, with power to employ an attorney or sub-agent therein, at Memphis, and their immediate agent, under such authority, would not be responsible for any default of said sub-agent, if selected with reasonable care and diligence.

8. If the plaintiffs placed their acceptances in the hands of the defendants, at Pittsburg, for collection at Memphis, and defendants promptly sent them to an attorney of good standing, at Mem-

22 P. F. SMITH—9

phis, and plaintiffs were at the time informed thereof, and were from time to time, for two years or more thereafter, informed of the progress of a suit carried on by such attorney, in plaintiffs' name, to enforce the collection, then, if plaintiffs never objected thereto, their conduct would amount to a ratification of defendants' acts, and the defendants are not liable for any subsequent default of said attorney.

The 7th and 8th points were refused.

9. If plaintiffs gave defendants, at Pittsburg, acceptances to collect at Memphis, Tennessee, they thereby constituted defendants their agents therein, and such agents are not responsible for any loss, so long as they have used the usual diligence and conducted themselves according to the usual course of doing such business.

Answer : " If the party employed by defendants to collect the acceptances in Memphis, Tennessee, received the money, and failed or refused to pay it over, defendants are answerable to plaintiffs, provided, you find that defendants' agent here acted within the scope of his authority, in undertaking the collection, or defendants subsequently recognised or approved his act. There is some evidence tending to show that one of defendants' agents, not directly connected with their office here, gave some attention to the claim in Tennessee."

10. If plaintiffs have a suit pending against said attorney at Memphis, for the money he has collected and retained, they have thereby ratified defendants' acts in the matter, and cannot sustain this suit.

11. If plaintiffs have such suit in their name undetermined and with prospect of recovery, they may have suffered no actual damage for which defendants would be liable in this action, and hence they cannot recover.

12. The evidence being uncontradicted, that there is a suit pending in the name of the plaintiffs against John W. Wood, the defaulting attorney, now pending in the Supreme Court of Tennessee, on an appeal or writ of error taken by said Wood from a judgment against him in the court below, and that there is a prospect of plaintiffs' recovering all their money, the plaintiffs cannot sustain this action.

13. It is not shown that defendants' business included making collections, nor that they personally were aware of the taking and prosecuting of plaintiffs' claims, while it is shown that at that time and long before, defendants' agents, in their office at Pittsburg, were acting as agents of another and different firm, whose sole business was the taking and making of collections, and that such agents entered said claims in the books of said collecting firm, and before Wood's default in settling the business of said collecting firm, treated the collection of said claims as part thereof, such

evidence is affirmative proof that defendants are not responsible for said claims, notwithstanding that said agents may, through carelessness or mistake, have used defendants' name in receipting for, or corresponding about said claim.

14. There is no evidence, or any right, or authority of defendants' agents to have received plaintiffs' claims in defendants' name or on their behalf, or in any way to connect them or their names with anything done about said claims.

The 10th to 14th points were refused.

The court further charged :—

* * * ["If it was part of the business of a 'mercantile agency' to receive collections, then such being the name which the defendants publicly give their business, the receiving collections is presumed to be a part of their business; and it appearing that their business was transacted by agents, those agents are presumed to have the requisite authority for the full and proper transaction of that business; and then the plaintiffs, relying thereon and not otherwise informed, are entitled to hold defendants answerable for their drafts placed in the hands of defendants' agent for collection. The first question then is, is the receiving of collections a part of the business of a 'mercantile agency,' so that people would generally take it for granted that such was the fact? If so, the defendants' agents are presumed to have authority so to do. The name of defendants' business, 'Mercantile Agency,' is significant, and we think in public acceptation would be taken to include the business of receiving collections. It is also in evidence that Dunn & Co.'s 'Mercantile Agency'—the only one, besides defendants', of which we have any testimony—received collections as a part of their business. You will take these facts into consideration, and if you find affirmatively on this point, then, if you believe the other evidence before you, the defendants are liable.]

"If you do not so find, you will then consider whether the defendants did not subsequently ratify the acts of their agents. You have before you the receipt, in defendants' name, for the drafts, and the receipt for the power of attorney in defendants' name, 'per D. W. Dickey,' a clerk in the office under Mr. Nevin, defendants' superintendent, both receipts delivered to the plaintiffs at the defendants' Pittsburg office. You have the letters of Mr. Nevin to the plaintiffs, written about the collection, with defendants' letter-heads, and as if by defendants, and signed in their name, 'per E. H. Nevin, Jr., superintendent,' and you have before you the fact that an agent of defendants at Memphis, one De Soto, also actively participated in attempting to recover plaintiffs' money. You will take all these things and all the evidence in the case together, and if you are satisfied therefrom that the defendants, subsequent to the receipt of the drafts, had knowledge that they had been received by their agent for collection, and acquiesced

therein, and permitted their agents to perform the acts shown to have been done by them in the character of defendants' agents, then the defendants are to be held as having ratified the acts of their agents." * * *

The verdict was for the plaintiff for $2436.80.

The defendants removed the record to the Supreme Court, and assigned for error the admission of the evidence objected to; the answers to their points and the part of the charge enclosed in brackets.

*M. A. Woodward,* for plaintiffs in error.—The implied authority of agency is proved not from its general style but from the usages of a particular business or of a particular class of agents: Story on Agency, 96, 98; Moore *v.* Patterson, 4 Casey 505. Before admissions of an agent could be given in evidence the agency must be proved: Hays *v.* Lynn, 7 Watts 524. An implied agency cannot be extended beyond the obvious purposes for which it was created: Story on Agency, sect. 87. Custom to be good, must be certain, uniform, reasonable and sufficiently ancient to be generally known: Collins *v.* Hope, 3 W. C. C. R. 149; Newbold *v.* Wright, 4 Rawle 195. The ratification of an act of an agent, in order to bind the principal, must be with a full knowledge of all the material facts: Phila. Wil. & Balt. R. R. Co. *v.* Cowell, 4 Casey 329; Owings *v.* Hull, 9 Pet. 607; Hays *v.* Stone, 7 Hill N. Y. 128; Copeland *v.* Mercantile Ins. Co., 6 Pick. 198. An agent exercising the usual diligence will not be responsible for loss from fraud or insolvency of persons whom he has trusted: Story on Agency, sect. 202. And the loss must be actual, not merely probable: Story on Agency, sect. 222.

*M. W. Acheson,* for defendants in error.—Actual authority may be inferred from acts and circumstances in the absence of direct proof: Dougherty *v.* Hunter, 4 P. F. Smith 380; Allegheny City *v.* McClurkan, 2 Harris 81; Sterling *v.* M. & S. Trading Co., 11 S. & R. 179; 2 Kent *613; Piatt *v.* Oliver, 2 McLean 268; Wright *v.* Burbank, 14 P. F. Smith 247. Where one undertakes to collect money he is responsible for the acts of the agent he employs: Wingate *v.* Mechanics' Bank, 10 Barr 104; Montgomery County Bank *v.* Albany Bank, 8 Barb. 396.

The opinion of the court was delivered, November 14th 1872, by

AGNEW, J.—There are but two questions in this cause which are required to be noticed. First, whether J. M. Bradstreet & Son authorized the receipt of June 2d 1865, by which they undertook to collect the claims mentioned in it, and, second, the nature of their liability. It is undisputed that J. M. Bradstreet & Son had a branch office in Pittsburg, of what they termed their "Improved

Mercantile Agency," and that the persons employed in this office were their agents. They only deny that their business was a collecting agency, asserting that it was confined to giving to subscribers information of the mercantile standing of men in business in the different parts of the country. It is in testimony that the acceptances mentioned in the receipts were delivered, as the witness states, to J. M. Bradstreet & Son at the office of the agency, and the receipt given for them is in the name of J. M. Bradstreet & Son, and was made out by a person in the office, acting in their business. This was in 1865. In 1867 the plaintiffs were called on by a person belonging to the office for a power of attorney to be sent to their agent or attorney in Memphis, Tennessee, to enable them to collect the moneys for the acceptances from John W. Wood, the attorney to whom the acceptances had been sent by them, and who having collected the money had failed to pay it over to the defendants. This power, directed to J. B. Woodward, of Memphis, and dated August 30th 1867, was handed to the person in charge of the Pittsburg office, who gave for it a receipt of the same date in the name of the defendants, stating that the power was executed by the plaintiffs at the request of the defendants, and addressed to *their* agent, J. B. Woodward. Woodward himself testifies that he was called on in Memphis by J. De Soto, the agent of J. M. Bradstreet & Son in that city, and at his request and in his company went to John W. Wood and demanded of him the money he had collected on the acceptances. He also testifies that his correspondence was with J. M. Bradstreet & Son, and not with the plaintiffs, and that he was engaged to attend to the business by J. De Soto, the agent of the defendants at Memphis. There are some minor matters not necessary to be detailed. These facts were clearly sufficient to go to the jury upon the question whether the receipt was given by the defendants, and we see no error in the court below refusing to take the case from the jury.

The next question is upon the nature of the liability arising upon the receipt. It is in the following words: " J. M. Bradstreet & Son, Improved Mercantile Agency. Pittsburg, June 2d 1865. Received of Messrs. Everson, Preston & Co. four duplicate acceptances for collection, *versus* Watt C. Bradford, Memphis, Tennessee, amounting in all to $1726.37." (Signed) " J. M. Bradstreet & Son."

It is argued, notwithstanding the express receipt " for collection," that the defendants did not undertake for themselves to collect, but only to remit to a proper and responsible attorney, and made themselves liable only for diligence in correspondence, and giving the necessary information to the plaintiffs ; or in briefer terms, that the attorney in Memphis was not their agent for the collection, but that of the plaintiffs only. The current of decision, however, is otherwise as to attorneys at law sending claims to

correspondents for collection, and the reasons for applying the same rule to collection agencies are even stronger. They have their selected agents in every part of the country. From the nature of such ramified institutions we must conclude that the public impression will be, that the agency invited customers on the very ground of its facilities for making distant collections. It must be presumed from its business connections at remote points, and its knowledge of the agents chosen, the agency intends to undertake the performance of the service which the individual customer is unable to perform for himself. There is good reason therefore to hold, that such an agency is liable for collections made by its own agents, when it undertakes the collection by the express terms of the receipt. If it does not so intend, it has it in its power to limit responsibility by the terms of the receipt. An example of this limited liability is found in the case of Bullitt *v.* Baird, decided at Philadelphia in 1870; the only case in this state upon the subject of such agencies. There the receipt read, "For collection according to our direction, and proceeds, when received by us, to be paid over to King & Baird." Across the face of the receipt was printed these words: "N. B. The owner of the within mentioned taking all the risks of the mail, of losses by failure of agents to remit, and also of losses by reason of insurrection or war." The limitation of the liability of Bullitt & Fairthorn, by Mr. Bullitt, himself a good lawyer, is evidence of his belief that a greater liability would arise without the restriction.

Recurring to the analogy of attorneys at law, the first point to be considered is the interpretation given by the courts to the terms of a receipt "for collection." In our own state we have several decisions in point. In Riddle *v.* Hoffman's Ex'r., 3 Penna. Rep. 224, Riddle, an attorney in Franklin county, gave a receipt in these words: "Lodged in my hands a judgment-bill granted by Henry H. Morwitz to Henry Hoffman for the sum of $1200, due with interest since the 15th of May 1811, which is entered up in Bedford county, which I am to have recovered if it can be accomplished." Riddle sent this bill to his brother, a practising lawyer in Bedford. The money was made by the sheriff, but by the neglect of the Bedford Riddle was not received from the sheriff, who became insolvent, and the money was thus lost. Hoffman sued the Franklin county Riddle on his receipt and recovered. On a writ of error it was contended that the words of the receipt, "which I am to have recovered if it can be accomplished," imported only a limited undertaking to have it collected by another, and not to collect it himself. But this court held that the receipt contained an express and positive undertaking for the collection of the money, if practicable, and not merely for the employment of another to that end; and that the defendant was bound by every principle of moral and legal obligation to make good the

[Bradstreet v. Everson.]

collection of the judgment by the application of reasonable diligence, skill and attention.

The next case is Cox v. Livingston, 2 W. & S. 103. This was the receipt: "Received of Mr. Thos. Cox, of Lancaster, Pa., *for collection*, a note drawn in his favor by Mr. Dubbs, calling for $497.65, payable three months after date." The note was left with an instruction to bring suit. The receipt was dated August 30th 1837, and Livingston died in January following without having brought suit. Dubbs became insolvent. It was held that Livingston was liable for the collection, though only two terms intervened between the receipt and his death.

Krause v. Dorrance, 10 Barr 462, was assumpsit against two attorneys for money collected and not paid by another attorney to whom they sent the note for collection. The liability of the original attorneys for the collection was admitted, but the point was made and succeeded, that a demand before suit was necessary. Rogers, J., says expressly they were liable for the acts of the agent whom they employed, but being without fault themselves, a demand was necessary before a resort to an action.

In Rhines v. Evans, 16 P. F. Smith 192, the receipt was: "Received for collection of A. Rhines one note on Lukens & Beeson, of Rochester, dated October 30th 1857, for $365." The liability of Evans, the attorney, was conceded, and the question was on the Statute of Limitations, and it was held the action was barred by the lapse of seven years and five months from the date of the receipt.

These cases show the understanding of the bench and bar of this state upon a receipt of claims for collection. It imports an undertaking by the attorney himself to collect, and not merely that he receives it for transmission to another for collection, for whose negligence he is not to be responsible. He is therefore liable by the very terms of his receipt for the negligence of the distant attorney, who is his agent, and he cannot shift responsibility from himself upon his client. There is no hardship in this, for it is in his power to limit his responsibility by the terms of his receipt when he knows he must employ another to make the collection: Bullitt v. Baird, *supra*.

We find cases in other states holding the same doctrine. In Lewis & Wallace v. Peck & Clark, 10 Alabama Rep. 142, both firms were attorneys. The defendants gave their receipt to the plaintiffs for certain notes for collection, and after collecting the money transmitted it to the payees in the notes instead of the attorneys who had employed them, the payees having however endorsed the notes: Held that Peck & Clark were liable to their immediate principals, the plaintiffs, there being no evidence that the payees had given them notice not to pay over to Lewis & Wallace, the original attorneys. This is a direct recognition of the

[Bradstreet *v.* Everson.]

liability of the collecting attorney to the transmitting attorney. The case of Pollard *v.* Rowland, 2 Blackford (Ind.) Rep. 22, is more directly in point. Rowland received from Pollard claims for collection, and sent them to Stephen, an attorney in another county. Stephen obtained judgment, and collected the money: Held that Rowland was accountable to Pollard for the acts of Stephen to the same extent that Stephen was, and could make no defence that Stephen could not; and that Rowland was liable to Pollard for the money. Cummins *v.* McLain *et al.*, 2 Pike (Ark.) Rep. 402, was a case nearly similar to the Pennsylvania case of Krouse *v.* Dorrance, *supra.* The attorney sent the claim to another attorney at a distance, and was held liable, but for the omission of the plaintiff to make a demand, he failed to recover. The court say the attorney is liable for the acts of the attorney he employs. In a Mississippi case two attorneys, Wilkison and Willison, received of plaintiff a claim for collection, and brought suit and obtained judgment. They dissolved partnership, Wilkison retiring from the practice; and Willison took another partner, Jennings, who received the money from the sheriff. In a suit against Wilkison as surviving partner of Willison, he was held liable for the receipt of the money by Jennings : Wilkison *v.* Griswold, 12 Smedes & Mar. Rep. 669.

In view of these reasons and authorities, we hold that a collecting agency, such as the defendants have been found to be, receiving and remitting a claim to their own attorney, who collects the money and fails to pay it over, is liable for his neglect.

Judgment affirmed.