[Civ. No. 31211. Second Dist., Div. Two. Apr. 23, 1968.]

DWIGHT C. BLAND, Plaintiff and Appellant, v. JAMES H. REED et al., Defendants and Respondents.

Marcum & Salmon and John A. Vander Lans for Plaintiff and Appellant.

Arnold, Smith & Schwartz and Jerome Smith for Defendants and Respondents.

ROTH, P. J.—Appellant Bland, a steel worker employed by Southwest Steel Rolling Mills was injured on November 6, 1962 in the course of his employment for which he was awarded $8,683.10 by the Industrial Accident Commission. He was a member of the United Steelworkers of America, AFL-CIO, District 38, one of the respondents.

James H. Reed, the other respondent, was an employee of the union. Bland sued both respondents in two causes of action, one predicated on negligence and the other on fraud, allegedly chargeable to respondents because the conduct, direction or advice (given by employee Reed) caused Bland to omit filing a lawsuit against California Oxygen Company, a corporation, whose negligence, he asserts, caused the injuries for which he received the above award.

A demurrer to appellant's second amended complaint was sustained without leave to further amend. This appeal is from the judgment of dismissal which followed.

It is clear from the allegations of the complaint that Reed was not a lawyer and appellant knew it. Nothing in the complaint shows that any officer of the union or anyone who had authority or who had ostensible authority to act for the union gave Reed authority to give legal advice or that he at any time gave any, other than the remarks made to appellant upon which he predicates the action before us. Nothing in the complaint shows that Reed held himself out as a lawyer or even as an expert on industrial accidents or that he had the ability or authority to give legal advice or do anything other than file claims for union members with the Industrial Accident Commission.

Further, although appellant sets out generally the nature of his lost cause of action against Oxygen, in his complaint against respondents there is nothing which alleges or suggests that Bland stated even these very general ultimate facts to Reed or that Reed knew the particulars of the accident or any of the particulars in respect of Oxygen's alleged negligence or that appellant or anyone else generally or specifically called any of these facts to Reed's attention.

Bland does allege that unnamed members of the union and a former unnamed committeeman (the nature of the committee is not disclosed) told Bland that "if you are injured in the plant . . . Reed will take care of your interest."

There is no allegation that Reed knew these statements had been made or that any of the union members or the committeeman referred to told Bland that Reed was a lawyer, gave legal advice, or said anything other than the quoted excerpt above.

The thrust of the first cause of action is that "[o]n or about September 18, 1963, plaintiff went to . . . REED . . . to consult him about the accident. . . . REED knowingly . . . and negligently advised . . . [him] he should not file a lawsuit against California Oxygen Company, . . . when he knew or should have known that plaintiff had to file an action . . . on or before November 5, 1963, or . . . [it] would have been barred by the one-year statute of limitations. . . ."

■ *Eagle Indemn. Co.* v. *Industrial Acc. Com.* (1933) 217 Cal. 244, 247-248 [18 P.2d 341] holds that representation of claimants before the Industrial Accident Commission constitutes the performance of legal services. Thus, practice by non-lawyers is specifically authorized by the Legislature. (Lab. Code, § 5700.)

The first cause of action requires us to decide whether respondents shall be held to a lawyer's standard of care.

■ Attorneys who delay bringing an action until the statute of limitations has run may be guilty of negligence. (*Drury* v. *Butler* (1898) 171 Mass. 171 [50 N.E. 527]; *Parker-Smith* v. *Prince Mfg. Co.* (1916) 172 App.Div. 302 [158 N.Y.S. 346]; *Gagne* v. *Bertram* (1954) 43 Cal.2d 481 [275 P.2d 15].) Such negligence may or may not be actionable when the attorney acted solely with a view to promote the interest of his client. (*Cox* v. *Livingston* (Pa. 1841) 2 Watts & S. 103 [37 Am.Dec. 486] (may not); *Morgan* v. *Giddings* (Tex. 1886) 1 S.W. 369 (may).)

At most respondent expressed an opinion on a matter of tactics concerned only with appellant's claim before the Commission. ■ It clearly appears from *Eagle, supra,* that one purpose for the legislative decision to authorize non-lawyers to appear before the Commission was that "numerous claimants for compensation are indigent and their claims are of such a character and the compsenation allowed by the Commission is so small as not to justify the engagement or service of a member of the bar, and that without the right to have a lay representative the claimant would ofttimes be unrepresented." (At page 249.) The court said further: "Whatever view may be urged as to the policy of the law in such matters, the legislature has declared the policy and we do not feel warranted in this instance in setting it aside." (At page 249).

■ It is clear from *Eagle, supra,* that the Legislature has been made aware of the dangers of non-lawyer practice before the Commission. The Legislature, however, has not changed its policy. In these circumstances, we consider it improper to hold a non-lawyer practicing before the Commission to a lawyer's degree of care—particularly when the negligence charged is not in respect of any misfeasance, nonfeasance or malfeasance in respect of the claim before the Commission. ■ "[I]f the means of knowledge be at hand, and equally available to both parties, and . . . there be no fiduciary or confidential relation, . . . the injured party must show that he has availed himself of the means of information existing at the time of the transaction before he will be heard to say that he was deceived by the misrepresentations of the other party." (*Champion* v. *Woods* (1889) 79 Cal. 17, 20-21 [21 P. 534, 12 Am.St. Rep. 126].)

It is not contended, nor do the allegations establish a confidential relationship. Such a relationship could relieve a party relying on it from diligence in protecting his interests.

450

(*Bacon* v. *Bacon* (1907) 150 Cal. 477 [89 P. 317]; *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 489 [275 P.2d 15].)

In *Haviland* v. *Southern Cal. Edison Co.* (1916) 172 Cal. 601 [158 P. 328], the relationship of an employee to his employer through its employee-agent was found not to justify reliance by the employee on representation made by the agent-employee. The court there noted that the employee signing the, paper had full possession of his faculties and had read and considered the instrument he signed, notwithstanding that the employee with whom he was dealing represented to him that the "release" would have no effect on his rights against the company, which statement was a misrepresentation. In *Rosen-baum* v. *Rosenbaum,* 257 Cal.App.2d 193 [64 Cal.Rptr. 632], the court held that not even a husband-wife relationship will excuse lack of diligence of one party where it appears that the party can be held to a knowledge of what should have been done in order to protect his individual rights.

In *Rosenbaum,* the court said at page 200: ". . . assuming there was a fiduciary relationship between plaintiff and defendant . . . such relationship does not justify reliance where the existence of the relationship is entirely immaterial to the consummation of the transaction involved."

▇▇▇▇ Appellant has not alleged a confidential relationship or other facts to show such justifiable reliance on the alleged representation or opinion of Reed as it affected the independent action to relieve him from a duty of diligence to protect such legal rights as he might have in addition to his claim before the Commission.

▇▇▇▇ Appellant, to support the theory that respondents are responsible because Reed voluntarily assumed a duty and then omitted to perform it, cites *Morgan* v. *County of Yuba,* 230 Cal.App.2d 938 [41 Cal.Rptr. 508] and *Merrill* v. *Buck,* 58 Cal.2d 552 [25 Cal.Rptr. 456, 375 P.2d 304]. The latter is not persuasive. (Duty of care predicated on voluntarily assumed relationship between real estate salesman and purchaser of house to warn of a concealed danger of which salesman had knowledge.) In *Morgan,* the court held that a sheriff's failure to give a promised warning to plaintiff's decedent of the release on bail of one who had threatened her life was actionable. The court said at page 942 :

"This brings the case into a new category—the negligent omission to perform an act voluntarily assumed. . . ." There is nothing in the complaint before us to warrant a finding that Reed voluntarily assumed for respondents some act

regarding appellant's separate claim against Oxygen which implicitly or expressly represented to appellant that he could rely on such act and thus induce appellant not to take the precaution of consulting a lawyer in respect of his rights against Oxygen or otherwise. The representation or opinion about the separate action was not a representation or opinion that appellant should not consult an attorney regarding it. The first cause of action does not even suggest that Reed made any kind of promise or did anything other than to undertake the filing of appellant's claim before the Commission. Appellant has therefore not shown that he comes favorably within the framework set up in *Biakanja* v. *Irving,* 49 Cal.2d 647 at p. 650 [320 P.2d 16, 65 A.L.R.2d 1358], that ''The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.'' (*Biakanja* v. *Irving, supra,* at page 650.)

▪ The thrust of the second cause of action is that '' [o]n or about September 18, 1963, . . . REED falsely and fraudulently represented . . . that plaintiff should not file an action for damages against the California Oxygen Company . . . rather . . . REED would see that an Industrial Accident Commission application was filed on plaintiff's behalf and the plaintiff would be much better off financially if the plaintiff's injury was handled in this manner.''

Bland then alleges that the representation quoted was false and Reed knew said representations to be false, that he had an excellent cause of action, and that the representations were made with intent to defraud and deceive, that plaintiff was ignorant of their falsity, believed them to be true, in reliance thereon did not file an action against Oxygen and that the statute of limitations has run against his action against Oxygen. There is no allegation in the second cause of action directly or by reference to the first that Reed knew of the facts on which Bland predicated a cause of action against Oxygen, or that the negligence of Oxygen was called to his attention, or that Reed held himself out as a lawyer or that appellant had any reason other than the information received

from the unnamed committeeman and members to think that Reed could advise with respect to claims against third parties, or that Reed was attempting to give appellant advice in any manner other than with respect to appellant's claim for Workmen's Compensation.

None of the allegations made in the second cause of action are an adequate base to show that appellant was justified in relying on the alleged representation or opinion of Reed. Reed's statement appears to be no more actionable than it would be if Reed had been a male nurse employed to render first aid on an employer's premises and had suggested to Bland that treatment for injuries suffered should be confined to the services of an internist, and that he didn't need a surgeon, or that he would be better off if he didn't go to a psychiatrist or physical therapist.

The judgment is affirmed.

Fleming, J., concurred.

HERNDON, J.—I dissent. I shall undertake to indicate the reasons for my opinion that the trial court erred in sustaining respondents' demurrer to appellant's second amended complaint. For the purpose of testing the sufficiency of appellant's pleading, the following facts alleged in the first cause of action must be deemed to be true:

On November 6, 1962, plaintiff was employed by the Southwest Steel Rolling Mills Corporation and was a member of defendant United Steelworkers of America, hereinafter referred to as the Union. On that date plaintiff, in the course and scope of his employment, sustained a severe injury to his back as the result of the negligence of an employee of the California Oxygen Company.

Defendant James Reed was a representative of the Union and the workers of the Southwest Steel Rolling Mills were within the jurisdiction of his working area. The acts of Reed of which plaintiff complains were within the scope of his authority as agent of the Union and were done with its permission and consent. On September 18, 1963, in accordance with the information given him by his fellow employees, including a former committeeman of defendant Union, plaintiff went to Reed's offices to consult him concerning his accident since Reed was thus held out by the Union as the person who would "take care of your interest" if "you are injured in the plant."

The Union "allowed . . . Reed to advise [its members] on the filing of the Industrial Accident Commission claims and process said claims for the members . . ." Reed "was not a person duly licensed to practice law in the State of California" although the Union "knew or should have known that . . . Reed was giving advice of a legal nature to [its] members . . ." Reed "advised the plaintiff not to file a lawsuit against the California Oxygen Company." Reed "gave the plaintiff an application for filing with the State Industrial Accident Commission, and at that time informed the plaintiff that if he filed a suit against the California Oxygen Company it would hurt his claim before the State Industrial Accident Commission." Reed "did see that plaintiff's Industrial Accident Commission application was filed . . . after November 5, 1963" although he "knew or should have known that plaintiff had to file an action for negligence against California Oxygen Company . . . on or before November 5, 1963, or his cause of action would have been barred by the one-year statute of limitations."

Reed's advice was "knowingly, wrongfully and negligently" given and as the proximate result thereof plaintiff was damaged in the amount of $50,000. "The sum of $50,000.00 is the amount plaintiff would have been entitled to from his cause of action against the California Oxygen Company, its agents and employees, for their negligence in injuring . . . plaintiff, after the lien of State Compensation Insurance Fund had been repaid." Plaintiff had received $8,683.10 in compensation indemnity and $2,809.81 in medical treatment from the Fund.

The second cause of action of plaintiff's complaint alleges, and respondents' demurrer admits, the following facts:

Reed "falsely and fraudulently represented to plaintiff that plaintiff should not file an action for damages against the California Oxygen Company . . . that rather . . . Reed would see that an Industrial Accident Commission application was filed in plaintiff's behalf and the plaintiff would be much better off financially if the plaintiff's injury was handled in this manner." When Reed "made said representations, he knew them to be false; such statements were made by him with the intent to defraud and deceive plaintiff and to induce him to act in the manner herein alleged. Plaintiff, at the time said representations were made, was ignorant of their falsity but believed them to be true. In reliance thereon, plaintiff was induced [not to file] and did not file an action against Cali-

fornia Oxygen Company . . . for the injuries he received on November 6, 1962 and when the plaintiff became aware that he had a cause of action against California Oxygen Company . . . it was in the year 1964, and the statute of limitations had run on his cause of action against [that company]. . . .''

The record before us fails to disclose either the grounds or the theory upon which the trial court determined that plaintiff's complaint failed to state a cause of action. The arguments advanced by respondents in support of the trial court's ruling as set forth in their brief filed herein are unconvincing.

It is unnecessary to decide whether the first cause of action of plaintiff's complaint is designed to state a cause of action on the theory of negligent interference with an economic expectancy (cf. 16 Stan. L. Rev., p. 664 et seq.), or whether its purpose is to allege only that Reed's misrepresentations were *negligently* made as distinguished from the allegations contained in the second cause of action to the effect that they were made with actual knowledge of their falsity and with the express intent to deceive. (Cf. 23 Cal.Jur.2d, Fraud and Deceit, § 28, pp. 68-70, and cases cited.) It is clear, however, that when tested only by a general demurrer, plaintiff's complaint sufficiently states a cause of action either under the theory of combined negligence and wrongdoing enunciated and applied in *Biakanja* v. *Irving,* 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], or under the general principles of the law of deceit set forth in Civil Code sections 1708, 1709 and 1710.

It is exceedingly difficult, of course, to determine in the abstract what kinds of advice given with reference to a subject matter within the ''flexible 'twilight zone' '' surrounding the unquestioned practice of the law will amount to an unauthorized invasion therein. The boundary line between the permissible and the prohibited is often very difficult to draw. (Cf. 6 Cal.Jur.2d, Rev., Attorneys at Law, § 258, p. 360, § 268, p. 368.) In *Biakanja* v. *Irving, supra,* 49 Cal.2d at page 651, our Supreme Court stated:

''Defendant [a notary public] undertook to provide for the formal disposition of Maroevich's estate by drafting and supervising the execution of a will. This was an important transaction requiring specialized skill, and defendant clearly was not qualified to undertake it. His conduct was *not only negligent but was also highly improper.* He engaged in the unauthorized practice of the law [citations], which is a misdemeanor in violation of section 6126 of the Business and

Professions Code. Such conduct should be discouraged and not protected by immunity from civil liability, as would be the case if plaintiff, the only person who suffered a loss, were denied a right of action." (Italics added.)

In the instant case, Reed necessarily entered into a confidential relationship with plaintiff when he undertook to protect plaintiff's interests by advising him concerning his injury and to assist him in connection with his industrial accident claim. Accepting as we must the allegations of plaintiff's complaint, Reed, as an integral and inseparable part of his undertaking to advise plaintiff as to the most advantageous method of prosecuting his claim, falsely and either intentionally or negligently represented to him that the filing of a third party suit "would hurt his claim" and that he "would be much better off financially if [his] injury were handled in this manner."

For present purposes it is unnecessary to decide whether or not Reed was engaged in the practice of the law as that expression is used in Business and Professions Code, section 6125. The Legislature has seen fit to authorize persons not admitted to practice law to represent others before the Industrial Accident Commission (Lab. Code, § 5600; *Eagle Indem. Co.* v. *Industrial Acc. Com.*, 217 Cal. 244, 247-249 [18 P.2d 341]), and such authorization necessarily must include the giving of advice in connection therewith. Therefore, although the giving of legal advice in this field may not be characterized as "improper," as were the actions of the notary public considered in *Biakanja*, nevertheless one who undertakes such responsibility owes a duty of care to those whom he undertakes to serve and who reasonably rely upon his advice.

Insofar as plaintiff's complaint alleges that his cause of action against the California Oxygen Company was lost by reason of respondents' fraudulent misrepresentations, numerous cases have held that damages may be recovered from the party guilty of such misrepresentations. (58 A.L.R.2d 500, and cases cited and discussed therein.) This rule is not necessarily altered merely because the misrepresentation may be characterized as one of law. As stated in *Regus* v. *Schartkoff*, 156 Cal.App.2d 382, 388-389 [319 P.2d 721]:

"Civil Code, section 1708, reads: 'Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights.'

"Section 1709 reads: 'One who willfully deceives another

with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.'

"Section 1710 reads: 'A deceit, within the meaning of the last section, is either:

" '1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

" '2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

" '3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

" '4. A promise, made without any intention of performing it.'

"The elements of actionable deceit are: a false representation of a material fact made with knowledge of its falsity, or recklessly, or without reasonable grounds for believing its truth, and with intent to induce reliance thereon, on which plaintiff justifiably relies to his injury. [Citation.] Count II contains facts which embrace all these factors. Fraud is the gravamen of the cause of action.

"It is argued that the representation alleged is one of law; that a misrepresentation as to a matter of law, or a concealment as to a matter of law, will not constitute actionable fraud even though such misrepresentation is believed and acted on.

"The general rule is that a misrepresentation of law is not actionable fraud. That is, a representation of law by a layman not occupying a confidential relationship toward the one to whom it is addressed and based on facts equally known or accessible to both does not ordinarily justify reliance on the representation. [Citation.] The general rule has exceptions. One exception is where the party expressing the opinion purports to have expert knowledge concerning the matter. [Citation.] Another exception is where the party expressing the opinion, having had superior means of information, possesses a knowledge of the law and thereby gains an unconscionable advantage over one who is ignorant and has not been in a situation to become informed. [Citation.] In either of these cases the injured party is entitled to relief. The right to relief is predicated on the same ground as if the misrepresentation of law were of a matter of fact."

I submit that appellant's pleading sufficiently alleges every essential element of actionable fraud. The representations allegedly made by respondent Reed are precisely set forth and

it is alleged that when he "made said representations, he knew them to be false; such statements were made by him with the intent to defraud and deceive plaintiff and to induce him to act in the manner herein alleged." Reliance and damage are alleged in conventional form. As stated in *Maxwell* v. *City of Santa Rosa*, 53 Cal.2d 274, 279-281 [1 Cal.Rptr. 334, 347 P.2d 678]:

"The principal attack which defendants make regarding the specific allegations of the complaint is that the allegations of fraud are general in nature, consist of legal conclusions, and fail to point out any acts amounting to fraud. They rely upon the rule that fraud, such as is relied on herein, may not be alleged in general terms, but 'must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud.' (*Hannon* v. *Madden, supra,* 214 Cal. 251, 267 [5 P.2d 4].) . . .

"In attacking these allegations, defendants rely upon authorities most of which arose upon review of the evidence, not the pleadings. Such authorities hold that the alleged fraud of city officials in the exercise of their legislative functions is not to be lightly presumed, and that strong proof is necessary to substantiate any such charge. *But we are not here dealing with the proof of plaintiffs' allegations. It is not for us to speculate how plaintiff expects to prove the frame of mind of the council members at the time they adopted certain resolutions.* It is sufficient that they have alleged specific acts which, if proved, would justify a finding of fraud sufficient to negate the proceedings. *The authorities on the subject require no more than that the allegations 'be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud.'* [Citation.] This requirement has been met." (Italics added.)

Respondents' contention that it was unreasonable as a matter of law for plaintiff to rely upon Reed's negligent or fraudulent misrepresentations is untenable and unavailing as a ground supportive of the ruling on the demurrer. It cannot be stated as an abstract principle of law that the relationship between a union member and an official representative of his union is such that the member may never rely upon the official's statements in a field in which the official purports to have superior knowledge.

"[T]he fact that a shrewd business man would not have relied upon such statements, did not justify [defendant real estate brokers] in making them to a trusting client, nor

relieve them from liability for so doing. As has been said, 'That plaintiff is too credulous is not generally a defense. "The test of the representation is its actual effect on the particular mind, whether it is a strong and circumspect mind, or one weak and too relying." ' [Citation.]" (*Feckenscher* v. *Gamble*, 12 Cal.2d 482, 496-497 [85 P.2d 885].)

Finally, respondents' reliance upon cases such as *Vaca* v. *Sipes*, 386 U.S. 171 [17 L.Ed.2d 842, 87 S.Ct. 903], and *Humphrey* v. *Moore*, 375 U.S. 335 [11 L.Ed.2d 370, 84 S.Ct. 363], is completely misplaced. These decisions merely deal with the question of the duty owing by a union to its membership in its collective bargaining activities. They have no relevancy to the duty arising in a situation such as the present where the union has undertaken to assist its membership, and to retain their loyalty and continued support, by providing services wholly unconnected with the collective bargaining process.

By its demurrer respondent Union admits that it knew its agent Reed "was giving advice of a legal nature to [its] members" and that "in doing the things" alleged in plaintiff's complaint Reed was "acting in the scope of [his] authority as such agent . . . and with the permission and consent" of respondent Union. The complaint avers in effect that the Union held out its agent Reed as a person competent to give the advice allegedly given.

In *Walnut Creek Aggregates Co.* v. *Testing Engineers Inc.*, 248 Cal.App.2d 690 [56 Cal.Rptr. 700], the court of appeal reversed a judgment of dismissal entered upon the granting of defendant's motion for a nonsuit. The following applicable principles of law are stated at pages 695-696:

"It seems clear that a duty of ordinary care *may* arise out of a voluntarily assumed relationship. (*Merrill* v. *Buck*, 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304] ; *Silva* v. *Providence Hospital of Oakland*, 14 Cal.2d 762, 775 [97 P.2d 798] ; *Johnston* v. *Orlando*, 131 Cal.App.2d 705, 708-709 [281 P.2d 357] ; *Valdez* v. *Taylor Automobile Co.*, 129 Cal.App.2d 810, 817 [278 P.2d 91] ; Prosser, Torts, § 54, pp. 339-343 (3d ed. 1964) ; 2 Harper and James, Torts, § 18.6, pp. 1044-1053; 2 Witkin, Summary of Cal. Law (1960) Torts, § 241, pp. 1436-1437; Cal. Jury Instns., Civ. (4th rev. ed. 1956) No. 101-G; Rest.2d Torts, § 323.) But such a duty is not absolute. It will exist only where required by public policy.

"In *Merrill* v. *Buck, supra,* 58 Cal.2d 552, 561, the court stated: 'Privity of contract is not necessary to establish the existence of a duty to exercise ordinary care not to injure

another, but such duty may arise out of a voluntarily assumed relationship if public policy dictates the existence of such a duty.' For the guidelines in determining the public policy as to a given case the court referred to *Biakanja* v. *Irving.* 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]. In that case (p. 650) the court stated : 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.'

''Additional criteria for determination of public policy in cases such as that before us, are discussed in *Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 309-315 [29 Cal.Rptr. 33, 379 P.2d 513], and *Raymond* v. *Paradise Unified School Dist.*, 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]. (See also *Stewart* v. *Cox*, 55 Cal.2d 857, 863 [13 Cal.Rptr. 521, 362 P.2d 345] ; *Stromer* v. *City of Yuba City*, 225 Cal.App.2d 286, 289-292 [37 Cal.Rptr. 240] ; *M. Miller Co.* v. *Dames & Moore*, 198 Cal.App.2d 305, 309 [18 Cal.Rptr. 13] ; *Burke* v. *Zanes*, 193 Cal.App.2d 773, 777 [14 Cal.Rptr. 619].)

''The determination of whether a duty of care exists is (at least in the first instance) a question of law for the court. (*Amaya* v. *Home Ice, Fuel & Supply Co., supra*, 59 Cal.2d 295, 307-308; *Richards* v. *Stanley*, 43 Cal.2d 60, 67 [271 P.2d 23] ; *Calandri* v. *Ione Unified School Dist.*, 219 Cal.App.2d 542 [33 Cal.Rptr. 333] ; *Raymond* v. *Paradise Unified School Dist., supra*, 218 Cal.App.2d 1, 7; Prosser, Torts (3d ed. 1964) § 89, p. 607; 2 Harper and James, Torts, § 18.8, p. 1058 ; Rest.2d Torts, § 328 B.)

''Defendant contends also that there can be no duty of care, in the absence of privity, as to the 'intangible [pecuniary] interests' of plaintiff. We do not find this to be the law. The nature, and closeness or remoteness, of the injury are elements of the criteria to be considered in determining the existence of a duty. *Biakanja, supra*, lists among the factors to be considered, 'the degree of certainty that the plaintiff suffered injury, [and] the closeness of the connection between the defendant's conduct and the injury suffered. . . .' (49 Cal. 2d 650.) And *Biakanja* itself allowed recovery (in the absence

of privity) for harm to the 'intangible interests' of the plaintiff in that case. Defendant cites, and we find, no authority stating that an intangible property interest is wholly excluded from protection from negligent injury.''

In the case at bench the question whether or not defendants owed plaintiff a duty to exercise due care in advising him with respect to matters of law directly relating to and affecting the safeguarding and enforcement of legal rights accruing to him as the result of an industrial accident is a question of fact if indeed it is not a question of law necessarily demanding an affirmative answer.

The unquestioned truth that defendant Reed ''was giving advice of a legal nature'' is most significant. Nothing is detracted from the significance of this fact when recognition is given to the legality of that practice at least to the extent that it was limited to advising and assisting union members in connection with the drafting and processing of their claims for compensation.

To the extent that there may be a question as to the reasonableness of plaintiff's reliance upon Reed's advice that he should not file a law suit against a third party, the circumstances should be realistically viewed from the standpoint of a lay member of the union utilizing the services of an agent held out as being competent to advise and assist him in the enforcement of his rights resulting from an industrial accident. Certainly it cannot be said as a *matter of law* that the plaintiff could not reasonably rely upon the advice of this ''workmen's compensation lawyer'' to the effect that the filing of a law suit would be inadvisable because it would adversely affect his claim for workmen's compensation.

I would reverse the judgment of dismissal and remand the cause to the trial court with instructions to overrule the general demurrer.

A petition for a rehearing was denied May 22, 1968. Herndon, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied June 19, 1968. Peters, J., was of the opinion that the petition should be granted.