# Waln et al., Admrs. of Conrow *v.* Beaver et al., Appellants.

*Attorneys at law—Neglect of duty—Damages.*

In an action against an attorney at law for failure to collect a loan secured by bonds and mortgage on several tracts of land, there was evidence that defendant was furnished with a reference to the mortgage containing a full list of the tracts of land and the warrantee names. Plaintiffs' evidence tended to establish that defendant was employed to collect the whole claim. Defendant testified that he was employed to collect only certain matured bonds. Before the whole debt was collected, the lands were sold at a tax sale, at a price insufficient to cover the mortgage. It appeared that the attorney was present at the tax sale, and that the lands had been advertised by their warrantee names in a number of different newspapers of the county. Several members of the bar testified that when claims secured by mortgage upon unseated lands were sent to them, they regarded it as their duty to look for unpaid taxes, and watch the sales and thereupon to notify their clients of these facts. *Held*, that the case was for the jury, and that a verdict for plaintiffs should be sustained.

*Practice, S. C.—Perfecting record—Stenographer's certificate.*

In a proper case the Supreme Court will return the record to the court below to afford the judges thereof an opportunity to see that the stenographer makes the proper certificate, and that all requests, or general objections, actually made in regard to the charge be noted and the fact of their allowance or refusal stated, and if such request or general objection was not allowed, that the reasons for such action may be stated.

Argued April 6, 1894.   Appeal, No. 280, Jan. T., 1894, by defendants, James A. Beaver and J. W. Gephart, trading as Beaver & Gephart, from judgment of C. P. No. 3, Phila. Co., March T., 1890, No. 216, on verdict for plaintiffs, S. Morris Waln and Howard S. Conrow, administrators d. b. n. c. t. a. of Thornton Conrow, deceased.   Before GREEN, WILLIAMS, MITCHELL and DEAN, JJ.   Affirmed.

Trespass to recover damages from attorney at law for alleged neglect of professional duty.   Before FINLETTER, P. J.

The facts and the evidence, showing the matters in dispute before the jury, are sufficiently reviewed in the charge of the court below to the jury and in the opinion of the Supreme Court.

The court charged in part as follows:

"It appears from the evidence that Thornton Conrow, on Jan. 28, 1881, sold thirteen tracts of land in Center county, Pa., to John Ardell, Jr., and in part payment thereof received fifteen bonds of $500 each, in all $7,500, payable in succession in July and January of each year, the last being payable July, 1888. These bonds were secured by a purchase money mortgage upon the said lands, which was duly recorded on April 8, 1881, and was then and thereafter a lien upon all the tracts of land. In 1884, eight of these bonds came into the possession of the plaintiffs, and it was then their duty to use all proper means to secure the payment, and if they failed in the discharge of this duty, they would have been personally liable for any loss which might arise therefrom.

" About the first of the year 1885, one of these bonds was due and unpaid, for which Mr. Ardell had given three promissory notes. After some negotiation with Mr. Ardell, Mr. Waln placed the notes with the defendants, and they collected the money due upon them, and sent it, less the fee, to Mr. Waln.

" At about that time, and subsequently until 1891, the evidence shows conclusively that the lands,—the remaining unpaid bonds,—the mortgage,—the various means of securing and collecting the claim of $4,500, was the subject of conversation and correspondence, in which Mr. Waln urged that something should be done to secure the claim upon the bonds and mortgage. Nothing, however, was done until 1891, and what was then done was fruitless, because the land had been sold in August, 1886, for taxes, and Ardell was insolvent. . . .

" [It is for you to say, from all this evidence, whether or not the defendants were employed as attorneys at law to collect the bonds and mortgage. And I frankly say to you, in view of the evidence furnished by the defendants in their correspondence, I do not see how you can come to any other conclusion than that they were employed to collect the bonds and mortgage.] [1] This, however, is a matter which you must determine from all the evidence, uninfluenced by my opinion. . . .

" [What did the defendants do to secure and collect this claim of $4,500, which was secured by a lien on lands worth more than $30,000 ? They were employed about January, 1885, and the land was not sold for taxes until June, 1886. It could

have been redeemed at any time before June, 1888. What did they do to secure the claim, or to collect it during these periods? It was for them to show you by evidence that what they did was properly done ; and that they did all that was required of them as attorneys to prevent the loss of the claim. If they have failed to do so, and if it appears from the evidence that the loss of the claim was due to their negligence, then the verdict should be for the plaintiff.] [2] . . .

" [It was the duty of the defendants to give the plaintiffs notice of the tax sale, if they had knowledge of it, or from all the circumstances of the case they should have known it.] [3]

" First, did they know of the tax sale at any time before the time for redemption had passed? [Mr. Waln has sworn that one of the defendants, Mr. Gephart, told him that he knew of the tax sale, and when Waln said, ' Why did you not tell me of it?' his answer was, ' I did not want to spoil your vacation.' This is not denied by the defendants positively, and is only inferentially questioned by the evidence of Mr. Gephart.] [4]

" It is admitted by Mr. Gephart that he attended the tax sale ; that he was there to buy, for another client, another piece of land ; and that their firm took the papers, in which the tax sales were advertised for six weeks. He has not explained how he knew that Mr. Croskey's land was advertised for sale for taxes ; and it is for the jury to say whether or not he obtained a knowledge of this fact from the advertisements in the papers. If he so obtained this knowledge, he has not explained how much of the advertisements he examined.

" [If the jury are satisfied from all the evidence that the defendants, or either of them, knew of the tax sale of the lands in controversy, then it was their duty to inform the plaintiffs in reasonable time thereafter, and before the time for redemption had expired, of the tax sale. If they did not do so, then they were negligent as attorneys, and are responsible for the loss or damage which resulted therefrom.] [5]

" [Even if the jury are satisfied from the evidence that the defendants did not have actual knowledge of the tax sale, they would be responsible, if the evidence satisfies the jury that they should have known it, as attorneys for the plaintiffs.] [6] . . .

" [What are the facts which the defendants knew in reference to this claim, and which they knew from the tax laws?

They knew that the claim was secured by the mortgage as a lien upon lands which they said were worth more than $30,000. They knew that the lands were unseated lands. They knew it could be sold for taxes. They knew what was necessary to make a valid sale; such as publication for six weeks, and all other matters pertaining thereto. They knew that after two years a tax sale would divest the lien of this mortgage. They took the newspapers in which all the tax sales were published. One of them was at the sale and purchased other lands for another client. They have testified that tax sales were a frequent occurrence, and that a large portion of that section of the state had been, and is, sold for taxes. And the correspondence shows that the plaintiffs urged them more than once to do something to secure the claim. They had access to the mortgage, which was of record near their office, which showed who first derived title from the commonwealth for each of the tracts of land; and they knew that in all tax sales the land is sold as the land of the person who first derived title from the commonwealth. It is for the jury to say, upon these circumstances, and from all the evidence in the case, whether or not the defendants should have known of the sale of this land for taxes. If they should have known this, they are as much responsible as if they had positive and direct knowledge of the sale for taxes.] [7] . . . .

" [It is singular that so little has been said about the circumstances about the tax sale and the parties interested therein. The defendants represented to the plaintiffs that Mr. Ardell was an enterprising business man, so honest that he paid a claim which he was not bound in law to pay; that he considered the lands worth more than $30,000, and growing in value, and that he was going to keep them in reserve for twenty years. General Beaver, as a witness here, told you that Ardell was a man of great energy and that he was paid his debt; and yet Ardell permitted his interest in this valuable property to be sold at sheriff's sale for a small debt due his brother-in-law, who became the purchaser; and there is no explanation of the necessity which compelled him to make this great sacrifice, although he was examined as a witness in this case. What is perhaps more singular is the fact the purchaser permitted this property to be sold and sacrificed for a few dollars of taxes;

and there is no explanation of this transaction, and no evidence
of its necessity. It was certainly Ardell's interest to keep this
property, and there can be no doubt from the evidence that it
was ample not only to pay the debt due his brother-in-law, but
also ample to pay the debts due by him to the plaintiffs, and
leave a considerable margin for himself. The result has been
that Ardell's interest has been lost; his brother-in-law's inter-
est has been lost, and there is nothing left of property said by
the defendants to be worth more than $30,000 to pay the claim
of the estate of the man who sold the property to Ardell. No
one has profited by these transactions except the lawyer who
purchased at the tax sale; and in the absence of his or other
evidence the presumption is that he purchased for himself.
But if this transaction was not honest it is evident that either
Ardell or the purchaser at sheriff's sale could have profited by
the tax sale, as it wiped away from the property the mortgage
and claim for $4,500. It is true that the jury must decide this
case upon the law and the evidence, and not upon suspicions;
but if the circumstances of the case, as exhibited by the evi-
dence, impressed the jury with the honesty or dishonesty of a
transaction, it is evidence for their consideration.] [8]

" No matter what opinions the jury may have as to other per-
sons than the defendants, they must not permit those opinions
to affect unfavorably the defendants or their evidence. No one
can doubt the integrity of the defendants; and if they have
erred in any respect it is an error of negligence only. At the
same time, what they knew of Ardell or any one else connected
with these transactions may be evidence for the jury in consid-
ering the degree of care and fidelity which they owed to their
clients, the plaintiffs.

" [The evidence shows that about the time they were assuring
the plaintiffs of the honesty of Ardell, and the great value of
the lands, they knew that his interest had been sold by the
sheriff, and did not apprise the plaintiffs of this fact until Mr.
Waln had written to them to proceed upon the bonds and mort-
gage.] [9] They also knew that Ardell's brother-in-law was
acting in the interest of Ardell.

" It is your duty to give consideration to all the evidence in
the case and the instructions of the court. [If the evidence
satisfies you that the defendants were retained to collect and

secure the whole claim upon the bonds and mortgages before the tax sale, and that they knew or ought to have known of the tax sale and failed to give notice of the sale to the plaintiffs, and in consequence the claim was lost, then your verdict should be for the claim with interest, if the land was of that value.] [10] And if the land was of less value, then the verdict should be for the value of the land with interest from the expiration of the time of redemption, June, 1888. If, however, you are satisfied from the evidence that the defendants were not employed to collect or secure the bonds and mortgage, then your verdict should be for the defendants."

Verdict and judgment for plaintiffs for $6,498.74.

There was a motion by appellees to quash the appeal for want of the stenographer's official certificate. Also a motion by appellants to perfect the record. Argued March 26, 1894, STERRETT, C. J. and GREEN, J., absent.

*S. Morris Waln, John W. Westcott* with him, for motion to quash, cited: Com. ex rel. v. Arnold [above, page 320]; Rosenthal v. Ehrlicher, 154 Pa. 403; Connell v. O'Neil, 154 Pa. 582.

*Joseph de F. Junkin,* contra, cited: Act of May 24, 1887, P. L. 199; Janney v. Howard, 150 Pa. 339.

PER CURIAM, March 31, 1894:

These motions rest on the absence of the official certificate of the stenographer to the copy of his notes filed and sent up with the record, and to the absence of any note or allowance of a general objection to the judge's charge, also sent up with the record. It is true that the record is duly certified by two of the judges of the court below, in their return to the writ of certiorari, and that the record so certified contains the stenographer's notes, or what purports to be such.

If counsel for appellee did not object because of the want of the stenographer's certificate, it is not probable that this court would do so; but counsel for the appellee does object. The object of the trial of causes is to administer justice. Technicalities, inaccuracies, omissions, and rules of practice ought to be so relieved against, when it is at all practicable, as to en-

able the courts to dispose of causes on their merits. In order that the questions raised in this case may be so disposed of, we think it our duty to return this record to the court below to afford the judges thereof an opportunity to see that the stenographer makes the proper certificate, and all requests or general objections actually made in regard to the charge be noted, and the fact of their allowance or refusal stated, and if such request or general objection was not allowed, that the reasons for such action may be stated.

It is accordingly ordered that the record, certified into this court by the judges of the Court of Common Pleas of Philadelphia, No. 3, in the above entitled case, be returned to the said court for completion and correction in accordance with the facts, and for the addition thereto of the proper certificate by the stenographer of said court by whom the notes of said trial were taken.

*Errors assigned* were (1–10) above instructions, quoting them.

*Joseph de F. Junkin* and *George Junkin*, for appellant, being engaged in another court, submitted their paper-book without argument.

*S. Morris Waln* and *John W. Wescott*, for appellees, cited: Bonner v. Herrick, 99 Pa. 225; Cox v. Livingston, 2 W. & S. 103; Gilbert v. Williams, 8 Mass. 57; 1 A. & E. Ency. L. 961; Weeks on Attorneys, 479–482; Stephens v. Whithe, 2 Wash. (Va.) 203; McWilliams v. Hopkins, 4 Rawle, 382; Smith v. Shuler, 12 S. & R. 240; Fluck v. Roplogle, 13 Pa. 405; Bagley v. Wallace, 16 S. & R. 245; Knaub v. Esseck, 2 Watts, 282; Martin v. Jackson, 27 Pa. 504; Shoemaker v. Bank, 11 W. N. 284.

PER CURIAM, May 21, 1894:

After a careful reading of the charge of the learned court below, we are unable to say that we find any error in it. The question at issue was eminently one of fact only and necessarily had to be submitted to the jury. The facts necessary to be established on the part of the plaintiff were clearly explained

to the jury and carefully submitted with proper instructions, and the jury found the facts in favor of the plaintiff.

We think the testimony of Mr. Waln that he gave the defendants positive instructions as early as October, 1885, to bring a suit on the overdue bonds, to bring an ejectment on the mortgage in order to get possession of the lands and to obtain a writ of estrepment to stay waste, is fully borne out by the letters passing between the parties during that month. This was long before the sale of the lands for taxes, and its effect upon the matter in controversy was necessarily for the jury. Even if a nonsuit had been asked for, which was not the .case, it could not have been granted. The facts that Mr. Gephart was present at the very tax sale at which these lands were sold, that previously to that time he had been furnished by the plaintiffs with a full list of the tracts and their warrantee names, and that these identical tracts by the same warrantee names were duly advertised for sale by the treasurer of the county for unpaid taxes, in a number of different newspapers of the county, bore directly upon the very subject of the controversy and could in no circumstances be withheld from the jury. Gentlemen of the bar were examined who testified that when claims secured by mortgage upon unseated lands were sent to them they regarded it as their duty to look for unpaid taxes, and watch the sales, and thereupon to notify their clients of these facts. Nothing of the kind was done in the present case, although the defendants knew of Ardell's insolvency before the claim was sent to them, and while they had it in charge, and they had constant difficulty in collecting the few small notes that were given by him for one of the bonds. The correspondence shows that the plaintiffs were constantly urging the collection of the notes and bonds, and the obtaining of security for their debt, and this fact also, and the inferences from it, were all for the consideration of the jury. It is not necessary to engage in a full discussion of the testimony; it is sufficient to say that it was for the exclusive determination of the jury and could not be withdrawn from them. Having carefully read the whole of it we are constrained to say that we can find no error in the manner of its submission to the jury. The assignments of error are not sustained.

Judgment affirmed.

## Jarecki *v.* Hays et al., Appellants.