PIONEER TELEPHONE & TELEGRAPH CO. v. GRIDER.

No. 1906.    Opinion Filed June 25, 1912.

(124 Pac. 949.)

1.  RELEASE—Effect—Action on Original Cause. When a personal injury case has been compromised, and the employee with full knowledge of the compromise, for a period of three months, has continuously accepted the fruits of the settlement, and thereafter, eight months after the injuries, still makes a claim under the contract of settlement, which is refused, it is too late for him to sue on the original cause of action.

2.  SAME—Validity—Fraud. Under the circumstances stated in the previous paragraph, where the plaintiff has been given eight days within which to decide whether he would accept the offer of settlement made, and where, after accepting it for several months, he continues to receive its benefits, and where the only evidence offered as tending to show fraud is that the plaintiff was told that he would be stricken from the pay roll and left to pay his own doctor's bill unless he signed the settlement, such evidence is insufficient to justify the submission of the cause to the jury upon the issue of fraud in the procurement of the compromise.

(Syllabus by Ames, C.)

*Error from District Court, Canadian County;*
                 ` *Geo. W. Clark, Judge.*                    .

Action by George E. Grider against the Pioneer Telephone
& Telegraph Company. Judgment for plaintiff, and defendant
brings error. Reversed, and judgment rendered.

*S. H. Harris* and *J. R. Spielman,* for plaintiff in error.

*J. J. Carney, Parker & Frame,* and *Phelps & Cope,* for de-
fendant in error.

Opinion by AMES, C. The plaintiff sued the defendant for
damages on account of personal injuries sustained while in the
defendant's employment. Amongst other defenses, the defend-
ant pleaded a contract by which the claim for damages had been
compromised and the liability of the defendant discharged by
written agreement signed by the plaintiff. The facts, with ref-
erence to the execution of the release and the consideration for
it, as disclosed by the plaintiff's testimony, are substantially as
follows: The plaintiff was injured on September 6, 1907, by
having a telephone pole fall with him; the injuries consisting of
a sprained ankle and a bruised back. At the time of the injury,
the defendant took charge of him, providing him with room and
board and medical attention. On September 7th, an employee
of the defendant called upon him with reference to a settlement
of the case, and presented to him a written release, stating that
the company would pay his wages during the period of his dis-
ability, would supply him with medical attention during his sick-
ness, and, as the plaintiff testifies, would give him employment
upon his recovery. He was suffering from the injuries and de-
clined to sign the release on that date. The agent of the defend-
ant thereupon informed him that he would have until the 15th
of the month to decide about the matter, and that, if he decided
not to compromise, the company would then stop paying his
wages and his medical bills. On the 15th the plaintiff executed
the release, writing into it in his own handwriting a statement
that he was familiar with the contents, and examined it before
executing it. At that time he was able to be about, and the next

day was well enough to call upon the doctor at his office. The release recited a consideration of $1, which was never paid, but the real consideration, as disclosed by the plaintiff's evidence, was as stated. The plaintiff accepted the benefits of this contract of settlement for about a month, at which time he stated to the defendant's foreman that he desired to go to Illinois, and was informed that, if he went, the defendant would strike his name from the pay roll. The plaintiff thereupon changed his plans and remained in Oklahoma until the 10th of December, at which time he went to Illinois, and up to which time he was paid in full under the contract. He remained in Illinois until the following May, and upon his return sought employment from the defendant, which was refused. He testified expressly that every promise made to him was complied with except the promise of permanent employment. When this employment was denied him, he brought this suit. The compromise was pleaded in bar of the action, and for reply the plaintiff pleaded that it was procured by fraud. The case was tried to a jury, and the issue of fraudulent procurement of the release was submitted to the jury, and judgment was returned in the plaintiff's favor.

Under the facts as disclosed by the plaintiff's own testimony, he had no cause of action for the original tort, and, if there was any cause of action, it was for breach of the contract. The only authorities cited by the plaintiff as tending to sustain his right to recover, notwithstanding this compromise agreement, are section 1055, Comp. Laws 1909, and *St. Louis & S. F. R. Co. v. Richards,* 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, and his counsel evidently recognized that the allegation of fraud is not sustained, because they say:

"In this connection we desire to call to the attention of the court the fact that the invalidity of this release does not depend entirely upon the allegation of fraud contained in the plaintiff's reply, but that, by the provisions of section 1055, Comp. Laws 1909, under the laws relating to contracts, it is provided that any contract or agreement, by which one of the parties, on account of the condition and the peculiar distress in which another party is placed, by which an unconscionable advantage is obtained, is void."

Section 1055, Comp. Laws 1909, is as follows:

"Undue influence consists: (1) In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) in taking an unfair advantage of another's weakness of mind; or (3) in taking a grossly oppressive and unfair advantage of another's necessities or distress."

It is manifest that this case does not fall within either the first or second paragraphs of the section. An examination of the plaintiff's own testimony discloses that he does not come within the last paragraph of the section. When he was injured, he was cared for by the defendant. He was told that, in the compromise of any claim he might have, the defendant would pay him "straight time and all expenses" during his period of disability, and that it would give him employment when he was well; that he could have from the 7th to the 15th to consider the matter, and, if at that time he refused to accept that offer, he would be cut off the pay roll and left to bear his own expenses. After this period of deliberation, he accepted the compromise and drew his pay for more than three months, and allowed the defendant to pay his doctor's bill and other expenses. He then returned to Illinois, where he stayed five months, and when he came back to Oklahoma, he applied for the employment under the contract. He was a lineman of experience, having previously worked in Pine Bluff, Little Rock, St. Louis, St. Joseph, and Cape Girardeau. He testified that upon his return from Illinois he applied for the "job that was promised me," and then continues:

"Q. And, if you had gotten the job that was promised you, then every part of the agreement made with you would have been filled completely according to your theory? A. Yes, sir. Q. Then the only matter in which you were deceived at all was the failure of the company to re-employ you after your six months' absence? A. Yes, sir. Q. At the time they entered into the agreement with you, Mr. Spielman and yourself, to give you employment, did he agree to give you six months' absence? A. Why, I don't remember that. Q. But when you came back they did fail to give you a situation? A. Yes, sir. Q. And in

all other respects every part of the agreement was kept? A. Why, yes, sir."

It is apparent, therefore, that eight months after this settlement had been made, the plaintiff was still satisfied with it; that he had accepted his pay while in the state; that he had accepted the benefits of his expenses; and that he was ready to accept the remaining portion of the contract after he had returned from Illinois, and after he had had eight months to deliberate about the agreement. It is manifest that, under these circumstances, the defendant had not taken "a grossly oppressive and unfair advantage of his necessities," and that, if he had any complaint against the defendant at that time, it was for failure to carry out the contract, and not on the original cause of action. *Papke v. Hammond Co.,* 192 Ill. 631, 61 N. E. 910; *Johnson v. Charleston & S. Ry. Co.,* 58 S. C. 488, 36 S. E. 851.

The case of *St. Louis & S. F. R. Co. v. Richards, supra,* does not sustain the position of the plaintiff, as that was a case in which the evidence tended to show that the release was procured by the false and fraudulent representations of the defendant's agents as to the plaintiff's physical condition; that it was for a grossly inadequate consideration; and that the plaintiff thereafter never did anything to ratify it.

It is manifest that in this case the original cause of action for the tort, if any existed, had been compromised and settled, and that, if defendant owed the plaintiff any duty, it was to give him employment.

Under the evidence in this case, there was no cause of action for the tort, and the peremptory instruction should have been given, and the case should therefore be reversed and judgment rendered for the defendant.

By the Court: It is so ordered.