[L. A. No. 3428. In Bank.—May 25, 1916.]

L. L. HAVILAND, Respondent, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Appellant.

NEW TRIAL—FAILURE TO INITIATE PROCEEDING IN TIME—COURT CANNOT GIVE RELIEF—DELAY IN SERVING BILL OF EXCEPTIONS.—The trial court is without authority to grant relief from the consequences of a failure to initiate a proceeding for a new trial within the time limited by statute, but it may relieve from the delay in serving a bill of exceptions.

ID.—GROUND FOR RELIEVING FROM DEFAULT—ENTRY BY ATTORNEY OF WRONG DATE IN JOURNAL.—The inadvertent entry of a wrong date in the book or journal in which an attorney keeps a record of the

proceedings to be taken by him may furnish sufficient ground for relief from a resulting default under the remedial provisions of section 473 of the Code of Civil Procedure.

Id.—Loss of Right to Move for New Trial—Excusable Mistake—Delay in Preparing Bill of Exceptions on Appeal from Judgment.—Where a defendant against whom judgment had been rendered intended to appeal therefrom, as well as from any order which might be made denying a new trial, and to present both appeals on a record containing the proceedings at the trial embodied in a bill of exceptions prepared for use on the motion for new trial, but lost his right to move for a new trial with the attendant right to prepare a bill of exceptions for use thereon by his failure to serve his notice of intention in time, his excusable mistake in that connection may be sufficient, under section 473 of the Code of Civil Procedure, to relieve him from the consequences of his delay in preparing a bill of exceptions to be used on appeal from the judgment.

Negligence—Sufficiency of Evidence.—In an action against an electric power company to recover for personal injuries suffered by an employee while working on one of the company's poles, the evidence is held sufficient to justify the jury's findings that the defendant had been guilty of negligence, that the plaintiff had not been guilty of contributory negligence, and that the injuries were not embraced within the risks assumed by him as a part of his employment.

Id.—Release of Liability—False Representations That Release was Mere Matter of Form.—A release of liability for such injuries, executed by the employee while in full possession of his faculties and with full knowledge of its contents, and the consideration for which he accepted and retained, cannot be avoided by him on account of false representations of an agent of the company who secured the release, to the effect that it was a mere matter of form and must be signed in order to keep him on the pay-roll of the company.

Id.—Fraud —Misrepresentations of Law.—Such representations did not constitute fraud in the legal sense. They were not statements of fact, but at most misrepresentations of law. Such misrepresentations, at least where there is no relation of trust or confidence between the parties, do not amount to fraud, and will not furnish a ground for the rescission of a contract.

Id.—Mistake of Law.—The belief of the employee that the release was not binding, or, in other words, that it did not mean what it said, is not sufficient to establish a mistake of law that would avoid it.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Morton, Hollzer & Morton, H. H. Trowbridge, T. A. Williams, and F. M. Fowler, for Appellant.

E. B. Drake, for Respondent.

SLOSS, J.—In this action, brought to recover damages for personal injuries alleged to have been caused by the defendant's negligence, there was a judgment in favor of the plaintiff for fifteen thousand dollars. The defendant appeals from the judgment. The grounds relied on for reversal appear in a bill of exceptions which was settled by the court below over the respondent's objection.

It is urged that the bill should not have been settled, and that it cannot be considered on this appeal. This contention, if sustained, would necessarily lead to an affirmance without any examination of the substantial merits of the attempted appeal.

The relevant facts connected with the presentation and settlement of the bill of exceptions may be briefly stated as follows:

The verdict of the jury was returned on July 1, 1912, and judgment entered on the following day. Notice of the entry of judgment was served on the defendant on the second day of July, 1912. On July 15, 1912, the defendant served on plaintiff its notice of intention to move for a new trial, stating therein that the motion would be made upon a bill of exceptions to be prepared. A proposed bill was served on August 24, 1912, a date which, so far as appears, would have been within the time allowed by law, stipulation, and order, if the notice of intention to move for a new trial had been properly served. But on July 15th, when such notice was served, the time for serving it had expired. (Code Civ. Proc., sec. 659.)

On October 8, 1912, the defendant served on plaintiff a notice that it would, on October 14th, apply to the court for an order relieving it from its default in failing to serve notice of its intention to move for a new trial within the time allowed by law. The motion having been made, the court denied it, as it was bound to do, in view of the settled rule that there is no authority to grant relief from the consequences of a failure to initiate a proceeding for a new trial

within the time limited by statute. (*Union Coll. Co.* v. *Oliver,* 162 Cal. 755, [124 Pac. 435].) Thereafter, on November 18, 1912, the defendant served upon plaintiff a draft of its proposed bill of exceptions, embodying the proceedings at the trial. A similar bill had, as above stated, already been served. On November 20th, plaintiff served a notice stating that he objected to the settlement of the bill, and would move the judge to refuse to settle it, on the ground that it had been served too late. The defendant served a counter-notice that it would apply to the court to be relieved from its default in thus delaying service of its proposed bill, specifying, as the grounds for such relief, its mistake, inadvertence, and excusable neglect. The two motions came on for hearing together and the court made its order granting the relief sought by the defendant, and settling and allowing the bill of exceptions. The respondent attacks the propriety of this order.

The attempted showing of inadvertence and excusable neglect was contained in the affidavits of two members of the firm of attorneys representing the defendant. In effect, these affidavits declared that, when notice of the entry of judgment was served on July 2, 1912, the senior member of the firm, who received the notice, gave it to a junior for entry in the journal in which said firm kept a record of pending proceedings. By mistake, the junior, in undertaking to note the last day for serving notice of intention to move for a new trial, made his entry under date of August 12th, instead of July 12th. The error was not discovered until July 13th. The time for giving the notice had then expired. The affidavits also state that it was the practice of appellant's counsel, when they desired to review a judgment, to move for a new trial, and, if such motion was denied, to appeal from both the judgment and the order of denial, taking up both appeals on a single transcript embodying the bill of exceptions or statement used on the motion for new trial. Such bill or statement could, under the law in force at the time of the proceedings under review, have been used on appeal from the judgment, as well as on appeal from the order denying a new trial. (Code Civ. Proc., sec. 950.) And the right to use the bill of exceptions or statement in support of the appeal from the judgment existed, even though no appeal had been taken from the order denying a new trial.

(*Vinson* v. *Los Angeles Pac. R. Co.*, 141 Cal. 151, [74 Pac. 757].)  If the court had had power to relieve the defendant from the consequences of the failure to make timely service of its notice of intention to move for a new trial, the showing made would unquestionably have warranted the granting of relief.  It is not necessary to cite the many decisions in which this court has held that the power given by section 473 to relieve from defaults is to be liberally exercised with a view to bringing about a determination upon the merits. Orders granting relief are to be set aside only where there has been a manifest abuse of discretion.  It will hardly be claimed that the inadvertent entry of a wrong date in the book or journal in which defendant's attorneys kept a record of the proceedings to be taken by them could not fairly have been held by the trial court to furnish sufficient ground for relief under the remedial provisions of section 473.

The respondent insists, however, that the inadvertence or excusable neglect upon which appellant relies had reference solely to the failure to serve a notice of intention to move for a new trial, and not to the service of a bill of exceptions.  A bill of exceptions on appeal from the judgment could, of course, have been prepared without regard to the making of any motion for a new trial.  Such statement or bill would, however, have had to be served within ten days after the entry of the judgment, if the action was tried by a jury, or after the receipt of notice of entry, if the trial was without a jury.  (Code Civ. Proc., sec. 650.)  The appellant made no effort to serve a bill within this time, and does not claim that it intended so to do.  The only bill sought to be prepared was one served, under section 659, within ten days (or such further time as was given by order or stipulation) after service of notice of intention to move for a new trial. But since no valid notice of intention to thus move was ever given, it is argued that the bill of exceptions was not one designed to be used on appeal from the judgment without any motion for a new trial.  If there was a default which could be excused, it was a default in serving notice of intention to move for a new trial and in serving a bill for use on such motion—not a default in serving a bill to be used on appeal from the judgment alone.  But we think this argument rests upon too narrow a view.  The affidavits justified the inference that the defendant intended, at all times, to

appeal from the judgment, as well as from any order which might be made, denying a new trial, and that its purpose was to make up a record upon which both the judgment and the order might be reviewed. In consequence of the erroneous entry in the journal, the defendant incurred a default affecting its right to prepare a bill of exceptions, in addition to its right to move for a new trial. It had in mind a bill of exceptions which should serve a double purpose. The bill was to supply a record of the proceedings at the trial. Such record was to be used in asking the court below for a new trial, and also in seeking a review of the judgment on appeal. The fact that it could not be used for one of these purposes is no ground for saying that the defendant did not intend to use it for the other. While the court cannot relieve from a failure to make timely service of notice of intention to move for a new trial, it may relieve from the effect of delay in serving a bill of exceptions. (*Stonesifer* v. *Kilburn,* 94 Cal. 33, [29 Pac. 332)]. Although the intended motion for a new trial had finally lapsed, the incidental proceeding for the settlement of a bill, available on appeal from the judgment, was still capable of resuscitation. The defendant was attempting the preparation of a record which was to be used for other purposes than the motion for a new trial. We see no reason why it might not be relieved, in so far as its mistake caused delay in the preparation of a bill of exceptions to be used on appeal from the judgment.

Concluding, therefore, that the court acted properly in settling the bill of exceptions, we come to a consideration of the appeal on its merits. The defendant was a corporation engaged in generating and distributing electric current. The plaintiff was a lineman in its employ. On the twenty-fourth day of June, 1911, he was engaged in work on one of defendant's poles. He came in contact with a high-power wire and received a shock, in consequence of which he fell from the pole and received severe injuries. There is no occasion to go into a more detailed recital of the facts of the occurrence. Suffice it to say that we are satisfied that there was sufficient evidence to justify the jury in finding that the defendant had been guilty of negligence, that the plaintiff himself had not contributed to his injury by his own negligence, and that the injuries were not embraced within the risks assumed by him as a part of his employment.

But the defendant set up in his answer a further defense. It alleged that on the fourteenth day of July, 1911, the plaintiff, for a valuable consideration, agreed to and did settle for and forever release and discharge the defendant from all claims and liabilities arising out of any injury or loss sustained by him in consequence of the injury described in the complaint. It appears that on July 14th, a little less than three weeks after the accident, one Houston, an employee of the defendant, visited the plaintiff, who was then undergoing treatment at a hospital. Houston presented to Haviland for signature a paper reading as follows:

"Los Angeles, Calif., July 14, 1911.

"Received of the Southern California Edison Company the sum of forty-two and 00/100 dollars, $42.00 in full release and discharge from any and all actions or causes of action, claims, demands and liability of every kind and nature whatsoever, for, upon, on account of, or by reason of any damage, loss, injury or liability sustained or which may be sustained by me in consequence of injuries received by me on or about 4:30 P. M. on June 24th, 1911, at 35th & Hope streets, Los Angeles, California. It is hereby expressly agreed and understood that the payment of said sum is not, and is not to be construed as, an admission on the part of said, The Southern California Edison Company of any liability whatsoever in consequence of said injuries, or accident."

At the same time he tendered him the sum of $42 mentioned in the paper. Plaintiff did not sign the paper at this time, but retained it in his possession for three or four days, after which he again met Houston and had some further talk with him. At this time Haviland signed the paper and gave it to Houston, receiving the $42.

That the paper on its face purports to release the defendant from all liability on account of the cause of action here sued upon cannot be, and indeed is not, questioned. The plaintiff sought to avoid the effect of the writing by claiming that he had been induced to sign it by the fraud of Houston. Haviland testified that at the first interview with Houston the latter had stated that the paper was "a form that the company used in case of accident," in order that the injured man might be placed on the pay-roll, and that the plaintiff would have to sign that form in order to be placed on the pay-roll. The plaintiff's wife, who was present at this interview, gave

testimony which in substance corroborated that of plaintiff, stating also that Houston had said that if Haviland signed the paper he would be taken care of and get his wages until he was able to go back to work. At the second interview Haviland and Houston were alone. On this occasion, as Haviland testified, Houston again said that the paper was a mere matter of form, which he had to sign in order to be placed on the pay-roll, and that if he did sign it he would receive $42 on account of wages for July (he had not been working during that month), and would be kept on the pay-roll until able to work. Houston also, according to Haviland's testimony, said that the paper was in no way binding. Haviland thereupon signed the paper, and received $42. Prior to the accident the plaintiff had been receiving wages of $3.50 per day. He was paid at this rate for July, August, September, October, November, and December, 1911, and for January, 1912. As he had done no work since the date of his injury, no part of the money received by him was due as wages. Early in February, 1912, he instituted this action. In addition to what has already been stated, Haviland testified that he was familiar with the words used in the release and knew their meaning in the English language, that he read the paper before he signed it, and that it contained no word or phrase of which he did not know the meaning. It is not claimed that when he had the interviews with Houston and when he signed the paper he was not in full possession of his faculties.

The sum total of the showing made by plaintiff is that, while he signed the release with full knowledge of its contents, and accepted and retained the consideration, he believed the statements of the defendant's agent that it was not binding, but was a mere matter of form, and must be signed in order to get him on the pay-roll. Houston, it may be said, denied that he made any such statements.

Assuming that these representations were made by Houston, their making did not constitute fraud in the legal sense. They were not statements of fact, but at most misrepresentations of law. It is well settled that such misrepresentations, at least where there is no relation of trust or confidence between the parties, do not amount to fraud, and will not furnish a ground for the rescission of a contract. (14 Am. & Eng. Ency. of Law, 2d ed., p. 54; *Upton* v. *Tribilcock*, 91 U. S.

45, [23 L. Ed. 203]; *Champion* v. *Woods*, 79 Cal. 17, [12 Am. St. Rep. 156, 21 Pac. 534, 55 Am. St. Rep. 508, note].) Whether the true ground for the rule be that everyone is presumed (or, rather, bound) to know the law, or that a representation regarding the law constitutes an expression of opinion upon which the party to whom it is addressed has no right to rely, the rule itself is thoroughly well settled. It has frequently been applied to cases involving attempts to escape the effect of releases like the one here involved. (*Denver etc. Co.* v. *Sullivan*, 21 Colo. 302, [51 Pac. 501]; *Gipe* v. *Pittsburgh etc. Ry. Co.*, 41 Ind. App. 156, [82 N. E. 471]; *Jossey* v. *Georgia S. & F. Ry. Co.*, 109 Ga. 439, [34 S. E. 664]; *Wallace* v. *Chicago etc. Ry. Co.*, 67 Iowa, 547, [25 N. W. 772]; *Pioneer T. & T. Co.* v. *Grider*, 34 Okl. 206, [124 Pac. 949].)

The cases cited by the respondent do not conflict with these views. None of them presented a set of facts at all like that before us. In *Smith* v. *Occidental & O. Steamship Co.*, 99 Cal. 462, [34 Pac. 84], it appeared that the plaintiff had not read the instrument by which it was sought to bind him, and, in fact, that he was not able to read it. In *Meyer* v. *Haas*, 126 Cal. 560, [58 Pac. 1042], the plaintiff was unfamiliar with the English language and signed a release upon representations made by an agent of the defendant, who at the same time occupied a fiduciary relation toward the plaintiff. In *Davis* v. *Diamond C. & L. Co.*, 146 Cal. 59, [79 Pac. 596], the paper signed was a mere ''receipt in full of all demands,'' and did not contain the definite and specific words of release found in the instrument here under consideration. It was properly held that evidence was admissible to show that such a general receipt was intended to cover only a certain matter under negotiation between the parties. *Edmunds* v. *Southern Pac. Co.*, 18 Cal. App. 532, [123 Pac. 811] was a case in which a release was set aside on the ground that the plaintiff, at the time he signed it, was in such a weak mental condition that he was unable to comprehend the effect of his act. But no case is cited, and we have found none, which decides that where a party in full possession of his faculties signs an instrument which he has read and considered and whose terms and provisions he understands, he may avoid the effect of his act by producing evidence that the adverse party told him that the instrument was not binding.

The court below instructed the jury as follows: "If you shall find from the evidence that the defendant, through its agent, fraudulently represented to the plaintiff that the writing filed in evidence here, called a release, would not be binding, and would be of no effect and was only to be used for the purpose of getting the plaintiff upon its pay-roll, and that the plaintiff relied upon such representations, then I instruct you that such representations would be a fraud, and if you find from the evidence that this writing called a release was executed under these circumstances, you will disregard the same."

That this instruction was erroneous is a conclusion that follows inevitably from what we have said.

There is no force in the contention that plaintiff was entitled to avoid the release on the ground of mistake. It is true that, by our Civil Code (secs. 1576, 1578), mistake of law is, under certain conditions, made a ground for relief equally with mistake of fact. Clearly, there was, in this case, no mistake of fact. And we think the facts shown cannot be held to amount to proof of mistake of law. The plaintiff knew that he was signing a paper which, by its plain terms, released the defendant from liability. He was under no misapprehension regarding its language or its meaning. His claim is that he was deceived into the belief that the paper was not binding, or, in other words, that it did not mean what it said. If evidence to this effect could be regarded as sufficient to establish a mistake of law, there would be little binding force in written agreements, knowingly and voluntarily executed by competent parties in full possession of the facts.

The judgment is reversed.

Shaw, J., Melvin, J., Lawlor, J., Henshaw, J., and Angellotti, C. J., concurred.