[Civ. No. 3331. First Appellate District, Division One.—July 17, 1920.]

## MARGARET ROBBINS, Appellant, *v.* HERBERT E. LAW, Respondent.

[1] MISREPRESENTATIONS — DISTINCTION BETWEEN LAW AND FACT — KNOWLEDGE OF FACTS—ADVICE OF COUNSEL.—Where a person does not conceal from another the facts constituting a cause of action, but only declares that those facts, well known to both parties, do not give rise to a cause of action, this is a representation of law and not of fact; and the further representation by such person that he has been so advised by his attorney is not to be considered as a representation of fact, when distinguishing between representations of fact and law.

[2] ID.—WHEN MISREPRESENTATIONS OF LAW ACTIONABLE—FIDUCIARY RELATIONS—SUPERIOR KNOWLEDGE—ESTOPPEL. — The general rule that misrepresentation of law is not actionable fraud and will not work an estoppel does not apply to transactions between parties holding fiduciary or confidential relations, or where one who has had superior means of information possesses a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed.

[3] ID.—MEANING OF "CONFIDENTIAL RELATIONS."—While the term "confidential relations" is ordinarily understood to apply to the relations established by law between attorney and client, husband and wife, guardian and ward, and other legal relations of this character, it is not confined to the strict fiduciary relationship existing between those having certain definite, well-recognized legal relations of trust and confidence, and so far as is germane to the subject of estoppel by fraudulent misrepresentations, this relationship can mean nothing less than that the one setting up the estoppel had the right to rely upon the representations.

[4] ID.—PLEADING—CONFIDENTIAL RELATIONS — SUFFICIENCY OF COMPLAINT.—The mere statement in a complaint that the plaintiff

had unlimited confidence in and relied upon the defendant is not a sufficient statement of the facts to show a confidential relation, but the facts must be alleged, from which the court can see that a confidential relation does in fact exist.

[5] RAPE—ACTION FOR DAMAGES—HOSTILE RELATIONSHIP — STATUTE OF LIMITATIONS.—In an action for damages for assault or rape, the defendant is not estopped from pleading the statute of limitations in bar, where the complaint read as a whole shows that the relationship between the parties subsequent to the assault was not one of confidence, but one of hostility.

[6] ESTOPPEL—ABSENCE OF CONFIDENTIAL RELATION—RELIANCE UPON REPRESENTATION—DILIGENCE—NEGLIGENCE.—Where no confidential relation exists, it is the duty of one setting up the estoppel to show, not only reliance upon the fraudulent misrepresentations, but also diligence in using the means at command or by inquiry, to ascertain the truth; and in this connection it must appear that in relying upon it he acted as a reasonably prudent person would act, and was not guilty of negligence or carelessness.

[7] RAPE—ACTION FOR DAMAGES—PLEADING — NEGLIGENCE — STATUTE OF LIMITATIONS—ESTOPPEL.—In an action for damages for assault or rape, where the complaint shows on its face negligence on the part of plaintiff in taking no action of any kind to redress her *known wrong for a period of two and one-half years after the* assault, or to make inquiry concerning the truth of the representations by defendant that she had no right of action against him, the defendant is not estopped from pleading the statute of limitations.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. H. Dam for Appellant.

Ira S. Lillick for Respondent.

KOFORD, J., *pro tem.*—This is an appeal from a judgment of dismissal following an order of the superior court sustaining, without leave to amend, defendant's demurrer to plaintiff's second amended complaint. The cause of action alleged is assault or rape alleged to have been committed by defendant upon plaintiff on the twenty-first day of October, 1916.

The demurrer, which was sustained without leave to amend, pleaded the statute of limitations. The action was commenced April 2, 1919, and is barred by the provisions of section 340, subdivision 3, of the Code of Civil Procedure, unless there are sufficient allegations in the complaint to estop the defendant from raising this plea. The sufficiency of these allegations for this purpose is the sole question on appeal. The following excerpts from the complaint are all the essential allegations involved in the consideration of this appeal:

"II. That heretofore, to wit, on or about the 21st day of October, 1916, . . . the defendant administered to plaintiff certain intoxicating and narcotic and anaesthetic substances; . . . that the same immediately brought a drowsiness and sleep over plaintiff and then and there prevented plaintiff from resisting . . . the acts of defendant . . . and rendered plaintiff unconscious of the nature thereof; and that, . . . the defendant, . . . willfully and feloniously committed a rape upon the plaintiff, . . . whereby plaintiff became pregnant and sick with child and so remained and continued for the space of two months . . .

"III. That, in consequence of said rape committed by the defendant upon the plaintiff, she became sick and sore and disordered and suffered greatly in her health and endured great pain and was prevented from transacting her necessary business and affairs for many months thereafter, and has also suffered great shame and humiliation, and has been and still is greatly worried and vexed and nervous, and has been otherwise injured to her damage of one hundred thousand dollars.

"IV. Plaintiff further alleges, in view of the demurrer filed by defendant to the amended complaint herein, pleading the statute of limitations thereto, that defendant . . . is estopped to plead the statute of limitations to this complaint . . . :

"(a) That, at the time of the acts of defendant hereinabove described and set forth in paragraph II of this complaint, and thereafter until the month of December, 1918, a relation of trust and confidence existed between the plaintiff and the defendant, and in that behalf plaintiff alleges: That prior to the said acts of defendant set forth in paragraph II hereof, defendant declared his love to plaintiff,

. . . and asked plaintiff to place her entire confidence in him and to trust him in everything and promised that he would always advise her of what was best for her to do; that plaintiff then and there accepted the defendant's said protestations of love as genuine and sincere, and, for that reason, the plaintiff permitted the defendant to and defendant did embrace and kiss and caress her in a proper and decorous manner; and thereupon plaintiff replied to the defendant that she would place her trust and confidence in him as so requested by defendant, and, accordingly, plaintiff thereupon did repose her trust and confidence in the defendant, and defendant thereby gained a great influence and control over plaintiff and in many ways dominated the plaintiff's thoughts;

"(b) That . . . plaintiff was and is a divorcee;

"(c) That when plaintiff awoke from the sleep hereinabove mentioned and to wit, on or about the 22nd day of October, 1916, the defendant was fondly caressing plaintiff and within a few minutes thereafter and as soon as plaintiff realized what had happened, . . . the defendant represented and stated to the plaintiff, in a very serious and impressive manner, that defendant was prompted to his said acts, set forth in paragraph II hereof by the strong attraction the plaintiff had for the defendant and by the great affection defendant had for the plaintiff, and defendant further represented and stated to plaintiff that plaintiff could do nothing whatever about or concerning such acts, and that the same were no offense because of the fact that plaintiff then and there was a divorcee and over twenty-one years of age, . . . and that defendant previously had been so advised by his attorney;

"That plaintiff then knew, of course, that the said acts of defendant were morally wrong or improper, but plaintiff had never read or heard of a case where a man was held liable for acts performed under such circumstances as those described in paragraph II hereof, and particularly plaintiff had never read or heard of a case where a man was held liable for such improper relations with a divorcee, and plaintiff feared that perhaps she was to blame for having partaken of the drink offered by defendant, as aforesaid, and while plaintiff felt insulted and humiliated and shamed by said acts and conduct of defendant, plaintiff did not know

that the same constitute a public offense in this state or that plaintiff had a cause of action against defendant by reason thereof;

"(d) That defendant, . . . also urgently requested and advised plaintiff to do nothing and to say nothing to anyone about or concerning the said acts of defendant, because such course, so defendant represented and stated, would only bring reproach upon both said parties, with no possible benefit to plaintiff . . . ;

"(e) That a few days subsequent to the 21st day of October, 1916, the defendant promised plaintiff that if plaintiff would keep quiet . . . defendant would do many things for plaintiff, . . . and particularly promised plaintiff that if, at any time, plaintiff should need any money, she could call upon defendant for the same and defendant would give it to her;

"(f) That defendant thereafter from time to time repeated the representations and statements and the request and advice and promises . . . to and including the month of December, 1918;

"(g) That, subsequent to the acts of defendant set forth in paragraph II hereof, to wit, from on or about the 22nd day of October, 1916, down to the month of December, 1918, defendant made certain small presents, . . . and plaintiff accepted the same by reason of the trust and confidence she reposed in defendant; . . . that the relations between plaintiff and defendant at all times subsequent to said 21st day of October, 1916, have been decorous and proper;

"(h) That, at all the times hereinabove stated, the plaintiff has not stood on an equal footing with the defendant and particularly in this: That on the 22nd day of October, 1916, plaintiff was of the age of 23 years and defendant was then of the age of 55 years, or thereabouts, was then a man of large means and of wide business experience and had had frequent occasion to consult with attorneys . . . while plaintiff was in humble circumstances and had had but little business or legal experience;

"(i) That plaintiff never questioned but, on the contrary, implicitly believed and relied and acted on each and all of the aforesaid representations and statements of the defendant . . . and continued so to believe and act and rely on them until the 4th day of March, 1919, and that on said

4th day of March, 1919, the plaintiff learned and discovered and knew for the first time that such representations and statements, and the whole thereof, were false and fraudulent.''

The remaining allegations of the complaint are general averments respecting the falsity of the representations, the fraudulent intent with which they were made, and the efficiency of said representations, promises and conduct to prevent plaintiff learning of her right to bring an action.

The allegations of the complaint fall naturally into two divisions: One, the misrepresentations, and, two, the special relations existing between the plaintiff and defendant.

[1] Analyzing the foregoing allegations of misrepresentation which are relied upon as pleading matter sufficient to estop defendant from pleading the statute of limitations, it will be seen that the gist of the misrepresentation is that the defendant represented to plaintiff that she had no cause of action. He is not alleged to have concealed the facts constituting the cause of action, but with having positively declared that those facts, well known to both parties, did not give rise to an action at law. This is a misrepresentation of law, not of fact. The misrepresentation of defendant that he had been so advised by his attorney is not to be considered as a misrepresentation of fact, when distinguishing between representations of fact and law. It is the same as though he had fortified his misrepresentation by stating that he had read it in the Civil Code, which would only be restating the misrepresentation of law in another manner.

[2] The general rule is well established that misrepresentation of law is not actionable fraud and will not work an estoppel. (Bigelow on Estoppel, sec. 438, quoted in *McKeen* v. *Naughton,* 88 Cal. 467, [26 Pac. 354]; *Champion* v. *Woods,* 79 Cal. 20, [12 Am. St. Rep. 126, 21 Pac. 534]; *Rheingans* v. *Smith,* 161 Cal. 365, [Ann. Cas. 1913B, 1140, 119 Pac. 494]; *Haviland* v. *Southern California Edison Co.,* 172 Cal. 608, [158 Pac. 328].)

The exceptions to this rule are stated in the case of *Champion* v. *Woods, supra,* as follows: ''Generally speaking, deception as to matters of law affords no ground of redress or relief. There are exceptions,—the rule does not apply to transactions between parties holding fiduciary or confidential relations, and where one who has had·superior means

of information possesses a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant, and has not been in a situation to become informed, the injured party is entitled to relief as well as if the matters represented were matters of fact."

Appellant insists, however, that the allegations of the complaint describing the relations between the plaintiff and defendant bring this case within both of the exceptions; that is to say, first, that the complaint shows a confidential relation between the parties, and, second, that the misrepresentations of law were made by one skilled in the law to one ignorant and uninformed and not in a situation to become informed.

[3] The term "confidential relations" is ordinarily understood to apply to the relations established by law between attorney and client, husband and wife, guardian and ward, and other legal relations of this character, but courts of equity have been careful not to fetter their own jurisdiction by defining the limits of this relationship. It is not confined to the strict fiduciary relationship existing between those having certain definite, well-recognized legal relations of trust and confidence, but is often said to extend to every possible case in which a fiduciary relation exists as a fact. The relation need not be legal; it may be moral, social, domestic, or merely personal. (2 Pomeroy's Equity Jurisprudence, secs. 956, 963; Story's Equity Jurisprudence, sec. 370; *Bacon* v. *Soule,* 19 Cal. App. 434, [126 Pac. 384].)

The various terms used in the authorities to describe the several classes of this relationship are often used synonymously, but so far as is germane to the subject of estoppel by fraudulent misrepresentations, it is clear that this relationship in its broadest extent can mean nothing less than that the one setting up the estoppel had the right to rely upon the representations.

The direct general allegations of the complaint, paragraph IV, subdivision a, h, and i, faithfully copy some of the usual descriptive definitions of confidential or fiduciary relations, or relations of trust and confidence. [4] But the mere statement in the complaint that the plaintiff had unlimited confidence in and relied upon the defendant is not a sufficient statement of the facts to show a confidential relation. The facts must be alleged, from which the court can

see that a confidential relation does in fact exist. (*Robins v. Hope,* 57 Cal. 493.)

[5] Furthermore, we must read the complaint as a whole. Considering the complaint as a whole, we are of the opinion that no confidential relation is shown to exist at any time subsequent to the date of the assault. The parties must be held to have been hostile. The most liberal definition of confidential relations could not include the relation between known enemies. The plaintiff knew that defendant had wronged her, committed violence upon her person, and, according to the complaint, caused her to feel sick, sore, disordered, vexed, ashamed, worried, insulted, and humiliated. Hostility and personal violence are poor bed-fellows to lie down with confidential relations. They do not harmonize in the same complaint. The hostility of defendant known to plaintiff, as shown by the complaint, speaks louder than the general allegations of trustful reliance upon the ravisher. There is no confidential relation between hostile parties.

As hostility, both known and shown, destroys confidential relations, it is equally fatal to other exceptions to the general rule that a misrepresentation of law is not actionable fraud, and will not work an estoppel.

[6] Where no confidential relation exists, it is the duty of one setting up the estoppel to show, not only reliance upon the fraudulent misrepresentation, but also diligence in using the means at command, or by inquiry, to ascertain the truth. In this connection it must appear that in relying upon it he acted as a reasonably prudent person would act, and was not guilty of negligence or carelessness. Thus it is held in *Moore v. Boyd,* 74 Cal. 167, [15 Pac. 670], that where the statute of limitations runs from the date of the discovery of the fraud the statute will commence to run from the date that the fraud should have been discovered by a man of ordinary prudence under the circumstances and with the means of knowledge readily available to him. (See, also, 25 Cyc. 1216, 1213, and cases cited; 16 Cyc. 738, and cases cited.)

We quote again from *Champion v. Woods,* 79 Cal. 20, [12 Am. St. Rep. 126, 21 Pac. 534]: "It is not sufficient under any circumstances that the party complaining was ignorant of the truth of the matter concerning which the representation was made, and that he believed it to be true. His situation may be such that he will be deemed in law to

have knowledge of the facts, and barred from making complaint, though actually ignorant of the true state of facts. It is a general principle that if the means of knowledge be at hand, and equally available to both parties, and the subject matter be open to inspection of both alike, and there be no fiduciary or confidential relation, and no warranty of the facts, the injured party must show that he has availed himself of the means of information existing at the time of the transaction before he will be heard to say that he was deceived by the misrepresentations of the other party. The fraud must have been practiced under such circumstances as to leave a reasonable inference that the injured party was deceived, and if the circumstances attending the transaction are such as to put a reasonable person upon inquiry, there can be no presumption of deceit. It seems quite incredible that the plaintiff, while engaged in a hostile action against her husband, could cherish such unbounded love and confidence in him as is set forth in the complaint.''

Known hostility destroys the right to rely upon the representations without using the means available to anyone to make inquiry and ascertain the law on a simple question. Nothing is shown in the complaint to indicate that plaintiff had any different means of ascertaining the truth on March 4, 1919, than at any time since the assault on October 21, 1916. If different circumstances existed at that time the complaint should allege what they were, so that the court could see whether the plaintiff had acted as a reasonably prudent person and with diligence in ascertaining her rights. (*Denike* v. *Santa Clara, etc.,* 9 Cal. App. 228, [98 Pac. 687].)

[7] The complaint, moreover, shows on its face negligence on the part of plaintiff in taking no action of any kind to redress her known wrong for a period of two and one-half years after the assault, nor to make inquiry concerning the truth of the strange representation of law alleged to have been made by the defendant. The plaintiff was not justified in relying upon these representations, without making inquiry on her own account. It is so natural and usual for a complaint to follow an assault of this kind that it is recognized in our law in criminal actions for this offense, where the complaint made by the prosecutrix immediately after the assault is admissible on behalf of the prosecution, and the

failure to make such complaint is admissible on behalf of the defendant.

Appellant learnedly discusses the psychology of the instant case. But the rules of law which are controlling upon us are applicable to all persons. It is quite clear that plaintiff's conduct was not that of a reasonably prudent person. We must hold, therefore, that the defendant is not estopped from pleading the statute of limitations, and that the demurrer was properly sustained.

The judgment is, therefore, affirmed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard by the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 13, 1920.

All the Justices concurred.