[Civ. No. 9991. Second Appellate District, Division One.—May 26, 1936.]

WILLIAM C. ADLMAN, Appellant, v. HAZEL K. Mc-DONALD, Respondent.

Leslie S. Bowden, Paul M. Joseph and Horace W. Danforth for Appellant.

W. C. Shelton and George W. Burch, Jr., for Respondent.

ROTH, J., *pro tem.*—Plaintiff was president of the Coast Braid Manufacturing Co., Ltd., a corporation (hereinafter

called "corporation"), which corporation had on January 19, 1931, made its promissory note in the sum of $5,000 to defendant as payee, in return for that amount of money loaned to the corporation by defendant through the persuasion of one G. P. McGregor. Before delivery of said note to defendant, it was indorsed by plaintiff and his wife and G. P. McGregor. The note was due May 19, 1931. On April 7, 1931, prior to the maturity of the note, defendant indorsed it in blank over the signatures of the prior indorsers, and caused it to be delivered to plaintiff in return for that amount of the par value of the stock of the corporation owned by plaintiff. The indorsement and the delivery of the note from defendant to plaintiff was an incident and consequence of the following transaction:

On April 7, 1931, defendant acting through one Briggs, a realtor, had pending and was about to escrow a real estate transaction with a Mrs. Halloran. McGregor, a friend and adviser of defendant, was associated with Briggs, and, as already suggested, had previously persuaded defendant to become interested in the affairs of the corporation, of which he was secretary, stock salesman and financial agent. On the date in question, defendant was in Los Angeles, but was planning to return forthwith to Tacoma, where she had her permanent residence. In the real estate transaction mentioned, it developed through the manipulations of McGregor that defendant could use $5,000 of the corporation's stock for that amount of value. She had no stock and the corporation had no permit to sell any stock in addition to that already issued. McGregor suggested to plaintiff, as a part of a plan to stabilize the corporation's finances, of which more will be said later, that plaintiff sell to defendant $5,000 worth of his stock in the corporation in exchange for the promissory note made by the corporation to defendant. This plaintiff agreed to do. Plaintiff contends that this agreement was predicated upon the condition that the defendant indorse the note in blank and that as a part of the same agreement the prior indorsements of plaintiff, his wife and McGregor were to be eliminated. The note was indorsed in blank by defendant, and when introduced in evidence, the prior indorsements were shown to have been crossed out. Defendant and McGregor testified that these indorsements were on the note at the time defendant signed. There was some dispute as to

this, but the trial court found as a fact that " . . . at the time said defendant endorsed and surrendered said note as aforesaid to G. P. McGregor, the said note bore the prior endorsements of the plaintiff, Ruth M. Adlman, and G. P. McGregor".

The evidence shows that on April 7, 1931, the corporation was in financial straits, and that McGregor, who was close to Briggs, the realtor, as well as defendant, conceived the idea of converting defendant from a creditor of the corporation to a stockholder thereof, by inducing her to exchange the note for stock, which stock could be used in the real estate transaction for its full par value. The corporation, however, had no permit at the time to issue any stock in addition to that already issued. McGregor, therefore, talked the matter over with plaintiff, inducing plaintiff to deliver personally owned stock to defendant until such time as the corporation commissioner would issue a supplemental permit authorizing the corporation to issue stock not only to defendant, but to other creditors of the corporation in exchange for their claims against the corporation. In this connection, McGregor testified: "I told Mr. Adlman that Mrs. McDonald was going back up North, and in order to effect the settlement with her prior to her going back North, we would have to deliver the stock for the note, and suggested to Mr. Adlman that he issue the stock for the time being, until a permit was issued, to issue additional stock, that would replace the stock that he was issuing at that time, and Mr. Adlman agreed to that and it was definitely understood between he and I that he would get the new stock in lieu of the stock that he was issuing at that time to close this transaction prior to Mrs. McDonald returning to the North. With that understanding I took his stock to Mrs. McDonald's house, and told her I would like to deliver this stock, and pick up the note at that time."

Plaintiff contended in the trial court, as he does here, that if McGregor or anyone else represented to defendant, when she indorsed the note in blank, that she would not be liable thereon, that this was a misrepresentation of law which could not support a defense of fraud. The legal proposition asserted by plaintiff may be sound enough. (*Robbins* v. *Law,* 48 Cal. App. 555, 560 [192 Pac. 118]; *Haviland* v. *Southern California Edison Co.,* 172 Cal. 601, 608 [158 Pac. 328]; *People's Bank of Ava* v. *Baker,* (Mo. App.) 193 S. W.

632.) The principle, however, has no application to the facts of this case for several reasons. The trial court made appropriate findings from abundant evidence that plaintiff, his wife and McGregor were prior indorsers, and that the indorsement and transfer of the note from defendant to plaintiff in exchange for the stock was an expedient adopted until a supplemental permit had been issued to the corporation, at which time plaintiff could get his stock back; and that, at the time of the transaction, defendant had no intention of doing anything except to assist in McGregor's plan of converting creditors into stockholders, and that plaintiff had the same idea.

Plaintiff's theory seems to be that even though defendant loaned $5,000 cash to the corporation, that instead of the corporation owing defendant $5,000, defendant now owes $5,000 to plaintiff. Plaintiff argues that the $5,000 par value of the corporation stock belonging to plaintiff was actually transferred to defendant in consideration of the blank indorsement of the corporation's note by defendant to plaintiff; that this stock was used by defendant in an independent real estate transaction between defendant and a third party; and that defendant's note against the corporation was paid in this manner. Assuming, as we must for the purposes of this case, that defendant was not imposed upon in the real estate transaction, defendant's note, according to plaintiff's theory, not only was paid when she accepted worthless stock for it, but, in addition, procured for plaintiff, his wife and McGregor a release from their liability as indorsers of the note. The effect of plaintiff's theory not only demonstrates the foregoing advantages to the corporation and the prior indorsers, but it appears, further, that defendant, as a premium for receiving payment of the note in the form of stock of an insolvent corporation, and because of her graciousness in relieving the prior indorsers, assumed legally a contingent liability for the sum of $5,000 to plaintiff, and, as plaintiff well knew, the legal contingent liability because of the financial condition of the corporation was actually and in fact a direct, fixed and personal obligation for $5,000, which all parties involved in the transaction knew defendant had the ability to pay. The tragedy of the transaction disclosed by the facts is that defendant had to defend a lawsuit to vindicate her right to

be imposed upon, so that she would not be subjected to further loss.

The evidence abundantly supports the findings of the court that plaintiff was a prior indorser, and that the representations made to defendant were sufficient to warrant her in believing and assuming that her indorsement and delivery of the note to plaintiff was a mere expedient pending the issuance of a permit to the corporation allowing it to issue further stock, and that any liability she incurred by indorsing the note was waived by plaintiff.

No appeal lies from an order denying a motion for a new trial. The appeal from said order is therefore dismissed.

The judgment is affirmed.

Houser, P. J., and Doran, J., concurred.